WILLIAM ALLEN et al. *v.* JAMES LEACH, Administrator
d. b. n., c. t. a., of WILLIAM ALLEN, Deceased.

Orphans' Court, New Castle, March Term, 1894.

Statute of Limitations in favor of executors, administrators
and guardians — the constitutional notice of the set-
tlement must first be given before the statute begins
to run.    An executor, administrator, or guardian de-
positing money to his private credit, renders him
personally liable for loss — likewise if deposited with
a private banker; Neglect of duty, holding money
past legal time, forfeits commissions.

1. Section 21, article 6 of the Constitution provides that the
executor, administrator or guardian shall, within three
months after settlement of his account, give notice in
writing to all persons entitled to shares of the estate,
or to their guardians, respectively, if residing within the
State, that the account is lodged in the office of the
register of wills for inspection.  Until this notice is
given, the Statute of Limitations cannot be pleaded to
exceptions to the account, notwithstanding the statute
which provides that " no exceptions to an account of an
administrator, executor or guardian, settled by the reg-
ister for the county, shall be received and filed in the
Orphans' Court after the expiration of three years from
the settlement of said account."

2. An administrator depositing money belonging to the es-
tate in a bank, in his own name, becomes thereby per-
sonally liable to the estate for the same, though it was
lost by the failure of the bank with which the deposit
was made.

3. An executor, administrator, or guardian should not place money belonging to the estate or ward with a private banking institution.

4. The holding by an executor or administrator of money belonging to the estate beyond the time for distribution is a failure of duty which forfeits his right to commissions.

EXCEPTIONS to the account of an administrator.

Judicial settlement of the account of James Leach, administrator *de bonis non,* with the will annexed, of the estate of William Allen, deceased, to which William Allen and others filed exceptions. The facts are fully set forth in the first portion of the opinion of the Chancellor.

R. G. Harman and J. H. Whiteman, for plaintiffs.

1. As to the question whether the commissions allowed to James Leach in his accounts should not be forfeited by reason of his neglect of duty as administrator of the estate.

If trustee acts honestly up to a certain period and receives a commission, and after that period acts dishonestly, whether or not his unfaithfulness will have a retrospective effect so as to take from him his commissions received during a period when he acted faithfully, is, both upon reason and authority, decided in the affirmative.

This must be true, for the intention of an executor, administrator, trustee or guardian is wrapped up in his own bosom, and is not known until the passing of his account, and if the law were otherwise he could commit a breach of trust and receive the same benefit as a faithful and honest trustee, because his act would not be known until the passing of his account. He could, therefore, simply pass his account, and by so doing could secure his commissions, and afterwards by retaining the funds for a longer period than he could justly claim, appropriate them to his own use, and thereby commit a breach of trust (as was done in this case), all of which may have been his deliberate intention from the beginning. But the case of Berryhill's Appeals, 35 Penn. St. 245, expressly decided that he would be entitled to no commissions whatever. The facts in that case showed the trustee acted honestly for ten years and received yearly commissions during the whole of that period. But from that period, the end of the said ten years, said trustee mismanaged said estate. Upon final settlement of the trust, the above-stated facts appearing to the court (said court being the Court of Errors and Appeals), said court determined that the trustee was not entitled to commission for the period of his mismanagement of said estate, and that said commissions that had already been allowed him during the faithful part of his trust, were, upon said facts, ordered by the court to be taken from said trustee and paid back to the *cestui que trust.*

If an executor, administrator or trustee deposit trust moneys in a bank in his own private name, or mingle

the trust moneys with his own moneys in his own private account, and the bank fails, the executor, administrator or trustee is personally liable, and must bear the loss.   Schouler on Executors, § 329; 1 Lewin on Trusts, 295; Adams' Eq., § 60; Hill on Trustees, 376; 1 Perry on Trusts, § 463 (443); 2 Story's Eq. Jur., § 1270; Massey v. Banner, 4 Madd. 219; McDonnell v. Harding, 7 Simm. 178; Freeman v. Fairlie, 3 Meriv-39; Massey v. Banner, 1 Jac. & Walk. 241; Wren v. Kirton, 11 Ves. 377; Darke v. Martin, 1 Beav. 525; Stafford's Case, 11 Barb. 353-355; Jenkins v. Walker, 8 Gill & Johns. 138-141, 142; Baskin v. Baskin, 4 Lans. 90-94; Case v. Abell, 1 Paige, 393-402; Stanley's Appeal, 8 Penn. St. 431-435; Shaw v. Bumman, 34 Ohio St. 25-32; Cartmell v. Allord, 7 Bush, 482-485; Mason v. Whittenne, 2 Caldw. 243, 244, 245; Sommers v. Reynolds, 95 N. C. 404, 414, 416, 417; McCallister v. Commonwealth, 30 Penn. St. 536-538; Williams v. Williams, 55 Wis. 300-309.

If an executor, administrator or trustee place trust moneys in a bank and let them remain for a longer time than was necessary for the carrying out of the purposes of the will or the administration of the trusts, especially if they are left to remain there when, according to the express terms of the will or trust, they should have been paid out and distributed among those entitled to the same, and the bank fails, the executor, administrator or trustee is personally liable, and must bear the loss. Schouler on Executors, 322; Am. & Eng. Ency. of Law, vol. 7, 352; 1 Lewin, 296-297; Hill on Trustees, 527-528,

536; 1 Perry on Trusts, 436, 443, 444; Wood v. Myrick, 17 Minn. 408; Dortch v. Myrick, 71 N. C. 224; Moyle v. Moyle, 2 Rus. & Mylne, 710.

If an executor, administrator or trustee deposit trust funds in his own private name or mingle the trust funds with his own moneys in his own private account, or permit the trust money to remain in bank for a longer time than was necessary to the carrying out of the purposes of the will, or the due administration of the trust, and especially if they are permitted to remain there when, according to the express terms of the will or trust, they should have been paid out or distributed among those entitled to the same, the executor, administrator or trustee is chargeable with interest upon said trust moneys. Schouler on Executors, 538; 1 Lewin, 338; 1 Perry on Trusts, 463-468; English Cases: 1 Brown Ch. 384; 15 Beav. 389-397; American Cases; Lind v. Lind, 41 N. H. 359; Mickle v. Cross, 10 Md. 362; Wistar's Appeal, 54 Penn. St. 60, 66; Duffy v. Duncan, 35 N. Y. 191; Estate of John B. Clark, 55 Cal. 355-357; Miller v. Bumly, 4 Henn. & Munf. 415, 417, 418; Estate of McQueen, 44 Cal. 590; Handy v. Snodgrass, 9 Leigh, 409; Utica Ins. Co. v. Lynch, 11 Paige, 520, 521, 522; Gwynn v. Dorsy, 4 Gill & Johns. 313-319; Norris' Appeal, 71 Penn. St. 106-123; Monteith, Ex. v. Ballery, 21 Md. 427-432; Smith's Admr. v. Hooper, 23 id. 285; Stanley's Appeal, 2 Wright, 525-530; Munford v. Murray, 6 Johns. 1-17; Garniss v. Gardiner, 1 Edw. Ch. 128-130.

At common law the office of trustee was purely honorary and commissions were not allowed.    Robinett's Appeal, 12 Cas. 174; Berryhill's Admr. Appeal, 35 Penn. St. 249; Clauseis Estate, 84 id. 51 (1877); Stehman's Appeal, 5 id. 417; Swartsoalu Appeal, 4 Watts, 77-79.

2. As to the plea of the Statute of Limitations in this cause, the provisions of section 21 of article 6 of the Delaware Constitution plainly brings this administrator without its bar.    No notice of the settlement of his account has ever been given to the parties entitled to shares in the estate, as the mandatory language of the Constitution requires.    His neglect to perform that duty will certainly not hasten the operation of the statute for his own benefit, and to save him harmless from his further wrong.

The following cases will fully support the position we take upon this point:

Statute of New York requires executor and administrator to publish notice of grant of letters testamentary, or of administration, and for creditors to present their claims against estates, etc., and if claims are rejected or disputed, to bring action within six months after such rejection, or be forever barred.

Held, to enable executor or administrator to take advantage of such statute — six months — he must prove that he gave the written notice.    If he does not prove this, the Statute of Limitations (six months) is no bar.

To subject a creditor to the short Statute of Limitations — of six months — relating to the duties of ex-

ecutors and administrators, it is incumbent on the latter to show the publication of notice to creditors to come in, etc. Clark v. Sexton's Admrs., 23 Wend. 477.

An executor or administrator cannot avail himself of the six months' Statute of Limitations above cited, unless he has strictly complied with the statute requiring him to obtain an order of the surrogate for the publication of a notice to creditors of the deceased to present their claims, and has published the proper notice. Hardy v. Ames, 47 Barb. 413; 1 Denio, 159.

The above cases embody the principle that governs our own — namely, if a statute makes it the duty of the executor or administrator to do a certain act, give notice, etc., and that when he does that act, the Statute of Limitations shall then (after a certain time) be a good bar to an action, the doing of that act (giving notice) is a condition precedent to the running of the Statute of Limitations; and if the executor or administrator, through neglect or otherwise, fail to do as the statute commands him to do, he shall not be permitted to plead the Statute of Limitations as a shield, for that would be to violate his duty and then take advantage of his own wrong at the expense of, and loss to, innocent persons.

Statute of Missouri requires executor or administrator to give notice to creditors of the grant of letters testamentary or of administration, within thirty days after such grant, and if he does so and creditors do not present their demands three years thereafter, they shall be forever barred, held, that executors or administrators can

only insist on the Statute of Limitations — three years — upon the condition precedent of their having given the statutory notice of the grant of letters. If they did not give such notice, the Statute of Limitations — three years — is no bar.

If publication of notice to creditors required by the twentieth section of second article of the act concerning the administration of estates be not commenced within thirty (30) days after grant of letters, debts against the estate are not barred after the lapse of three years. Hawkins & Bleckwell v. Ridenhour, 13 Mo. 125.

An administrator cannot avail himself of the lapse of three years as a bar to a demand against the estate of his intestate unless he has given notice of his letters in the manner and within the time prescribed by law. Bryan v. Mundy's Admr., 17 Mo. 556, 557; Clark v. Collins, 31 id. 260; 54 id. 102.

Statute of Mississippi requires executor or administrator on final settlement of accounts to give forty days' notice to those interested in the estate, that said final settlement of accounts is on record, and if it be not correct, to except to it. Held, that executor or administrator cannot plead Statute of Limitations as a bar unless he has performed his duties by giving statutory notice. If he does not give the statutory notice, such final accounts are treated, 1st, merely as annual accounts; 2d, those interested may come in and except to them after any lapse of time.

As to heirs and legatees not notified, an executor's final settlement has only the effect of an annual account. Crawford v. Redus et al., 54 Miss. 700; Heitkamp v. Biedenstein, 3 Mo. App. 450; Treadwell v. Herndon, 41 Miss. 38; Winborn v. King et al., 35 Miss. 157; Neal's Admr. v. Williams' Admr., 12 id. 649.

The New York and Missouri cases embody the same principle that is involved in our own, namely, that when a statute requires an executor or administrator to give notice to parties interested, and that if they give such notice, then the Statute of Limitations (within a certain time after) shall be a bar upon the conditions precedent that such notice be given, and if such notice be not given, the Statute of Limitations cannot be pleaded, and it shall never be a bar.

But the Mississippi cases involve the very identical principles, the difference being that in the Mississippi cases, the notice required to be given is a mere statutory notice; in ours, the notice is demanded by the Constitution itself.

And as the Mississippi cases decided that a final settlement without the statutory notice was merely,

1. An annual settlement; and, 2. That suit could be brought at any time afterwards, surely not only the same doctrine should apply with us, but with a much greater force, since the Mississippi notice is a notice that can be repealed by any Legislature, whereas the Delaware notice is a notice that cannot be touched except by the people themselves, sitting as a constitutional convention.

Anthony Higgins, for defendant.

The Statute of Limitations, as pleaded in this case, operates as a bar to the exceptions. Revised Code, chap. 124, §§ 7, 8.

This is true, notwithstanding the provision of the Constitution of Delaware, article 6, section 21, which is as follows: "An executor, administrator, or guardian, shall file every account with the register for the county, who shall, as soon as conveniently may be, carefully examine the particulars with the proofs thereof, in the presence of such executor, administrator or guardian, and shall adjust and settle the same, according to the very right of the matter, and the law of the land; which account so settled shall remain in his office for inspection; and the executor, administrator, or guardian, shall, within three months after such settlement, give notice in writing to all persons entitled to shares of the estate, or to their guardians, respectively, if residing within the State, that the account is lodged in the said office for inspection.

" Exceptions may be made by persons concerned, to both sides of every such account, either denying the justice of the allowances made to the accountant, or alleging further charges against him; and the exceptions shall be heard in the Orphans' Court for the county; and thereupon the account shall be adjusted and settled according to the right of the matter and law of the land."

Section 7 of the Act of Limitations bars the exceptions, notwithstanding the provision of section 21 of

the Constitution, which provides that the executor, administrator, or guardian, shall, within three months after such settlement, give notice in writing to all persons entitled to shares of the estate, or to their guardians, respectively, if residing within the State, that the account is lodged in said office for inspection.

The provision of section 7, chapter 124, is that no exception to the account of an administrator settled by the register shall be received or filed in the Orphans' Court after three years from the settlement of said account.

The Constitution provides that the notice in writing required of the executor, administrator, or guardian, shall be within three months after such settlement. The Act of Limitation, therefore, begins to run with the settling of the account by the register, while the notice need not be given until three months thereafter. The Constitution does not say that the failure to give such notice shall upset or abrogate such settlement.

This construction of the statute and the article of the Constitution accords with the general principle of law that the Statute of Limitations begins to run whenever the creditor or plaintiff could bring his action, and not when he knew he could. 3 Parsons on Contracts, 92; Waters v. The Earl of Thanet, 2 Q. B. (N. S.) 757.

In cases of executors and administrators, the limitations imposed by statutes are more stringently enforced than those of the general Statutes of Limitation both at law and in equity. Wood on Limitations, 111 (note 1), and cases cited.

The right to file exceptions to an account is complete in the exceptant as against the executor or administrator from the time the account, after having been filed, has been adjusted and settled by the register. The right to except as a cause of action completely accrues upon such adjustment and settlement. The right to except is complete before any written notice is given by the executor or administrator, and even if he never gives such notice. The provision of the Constitution creating the right to except does not prescribe that it shall arise only after written notice of it shall have been given by the executor or administrator. It cannot be claimed that the exception made to an account is bad because no notice has been given. If such were the construction of the Constitution, the present exceptions themselves would fall, no notice having been given by the administrator in this case.

The Statute of Limitations begins to run from the time when the right of action accrues. The only exception to this rule is that at the time when the right of action accrues, there must be in existence a party to sue and be sued, or the statute does not attach thereto. Wood on Limitation of Actions, 254, § 117.

As in the case of a decedent, the statute does not begin to run until the administrator or executor has been appointed and qualified. This rule is applied in the case where a demand is necessary to fix the liability of the party; in such case, until demand made, and the right of action thereby shall have accrued, the Statute of Limitations does not begin to run. Wolf v. Whiteman, 4 Harr. 246.

Even as against the provision of the Constitution of the United States, that no State shall pass any law impairing the obligation of contracts, Statutes of Limitation are invariably upheld because they only affect the remedy. Wood on Limitation of Actions, 24, § 11.

The right to take exception to the account of an administrator with the will annexed by way of appeal to the Orphans' Court accrued to the parties concerned immediately upon their settlement by the register.

The Constitution, while providing that exceptions may be made by persons concerned, nowhere says that the right to make such exceptions is postponed until notice shall have been given to them in writing by the executor or administrator.

The Constitution nowhere says that the right to except from the settlement of the account is suspended by any delay or failure on the part of the executor or administrator to give such notice.

The Act of Limitation, therefore, and the bar of the statute begins to run from the time of such settlement, and there is no word or letter of the Constitution which says that the running of the bar of the statute is suspended or delayed by the failure or neglect of the executor or administrator to give such notice.

These principles have been fully established by the Superior Court on appeal from the Orphans' Court in the case of State v. Wilson's Admr., 3 Harr. 348; State v. Layton et al., 4 id. 512; Layton v. State, id. 8, 34.

The court will not consider the constitutional question raised in this case as to the operation or nonopera-

tion of a statute passed by the General Assembly, unless such a question is absolutely necessary to the determination of the cause.

The *laches* of the exceptants, the long delay in taking action, and the acquiescence for so many years by the exceptants without demand upon the administrator, create an equitable estoppel which precludes and bars the exceptants from obtaining any relief in this court.

The court will not, as a general rule, pass upon a constitutional question and decide a statute to be invalid unless a decision upon that very point becomes necessary to the determination of the cause. While courts cannot shun the discussion of constitutional questions when fairly presented, they will not go out of their way to find such topics. It is both more proper and more respectful to a co-ordinate department to discuss constitutional questions only when that is the very *lis mota*. In any case, therefore, where a constitutional question is raised, though it may be legitimately presented by the record, yet if the record also presents some other and clear ground upon which the court may rest its judgment, and thereby render the constitutional question immaterial to the case, that course will be adopted, and the question of constitutional power will be left for consideration until a case arises which cannot be disposed of without considering it, and when consequently a decision upon such question will be unavoidable. Cooley on Constitutional Limitations, 196.

A court, in declaring a law unconstitutional, must necessarily cover the same ground which has already been covered by the legislative department in deciding

upon the propriety of enacting a law, and they must indirectly overrule the decision of that co-ordinate department. The task is, therefore, a delicate one, and only to be entered upon with reluctance and hesitation. Cooley on Constitutional Limitations, 193; *ex parte* Randolph, 2 Brock, 447; Frees v. Ford, 6 N. Y. 176, 178; Cumberland, etc., R. R. Co. v. County Court, 10 Bush, 564; White v. Scott, 4 Barb. 56; Mobile & Ohio R. R. Co. v. State, 29 Ala. 573.

The *laches* of the exceptants operate as a bar to the action. The events sought to be inquired into in this case occurred nearly twenty years ago, and, while the last account filed by the administrator was in 1886, from 1873 up unto that time, when the exceptants had full opportunity of bringing any action to charge this administrator for any sums due them, no demand was ever made on him for a settlement, and the question as to whether or not this administrator can now be charged with funds lost by him on account of the failure of a certain bank nearly twenty years ago, enters into a discussion of these facts at this late day, when the memory of the defendant is dimmed by the lapse of time, and part of the official records of a court are missing or have been destroyed.

The bar upon which the doctrine of laches is based is *vigilantibus non dormientibus, sebveniunt leges.* Stale demands will not be aided where the party has slept upon his rights and acquiesced for a great length of time. The doctrine is based upon grounds of public policy, and its aim is the discouragement, for the peace

and repose of society, of stale and neglected demands.
Piatt v. Vattier, 9 Pet. 405; Macnight v. Taylor, 1 How.
161; Bowman v. Wathen, id. 189; Wagner v. Baird,.
7 id. 234; Story's Eq. Jur., § 1520; Badger v. Badger,
2 Wall. 87; Hume v. Beale, 7 id. 336; Marsh v. Whit-
more, 21 id. 178; Sullivan v. Portland & K. R. Co., 94
U. S. 806; Godden v. Kimmell, 99 id. 201; Brown v.
County of Buena Vista, 95 id. 157; Speidel v. Henrici,
120 id. 377; Johnson v. Johnson, 5 Ala. 90; Castner v.
Walrod, 83 Ill. 171; Chew v. Farmers' Bank of Md., 2
Md. Ch. Dec. 231; Sedlack v. Sedlack, 14 Or. 540;
Hayes' Appeal, 113 Penn. St. 380; Doggett v. Helm, 17
Gratt. (Va.) 96; Coleman v. Lyne, 4 Rand. (Va.) 494;
Frader v. Jarvis, 23 W. Va. 100; Smith v. Clay, 3 Bro.
Ch. 640; Hovenden v. Lord Annesley, 2 Sch. & Lef.;
Hercy v. Dinwoody, 4 Bro. Ch. 257; Beckford et al.
v. Wade, 17 Ves. 87.

In many cases, a similar doctrine to the doctrine laid
down in the above cases has been enunciated, although
stated in different language.    Perkins v. Cartmell, 4
Harr. 270; Smith v. Coker, 14 Ga. 390; Aikens v. Hill,
7 id. 573; Bickerman v. Burgess, 20 Ill. 266; Hughes v.
Jones, 2 Md. Ch. Dec. 178; Smith v. Washington, 11
Mo. App. 519; Pickering v. Pickering, 38 N. H. 400;
Smith v. Duncan, 16 N. J. Eq. 240; Sharp v. King, 3
Ired. Ch. (N. C.) 402; Sleamers' Appeal, 58 Penn. St.
168; Classcock v. Nelton, 26 Tex. 150; Harcourt v.
White, 28 Beav. 303; Stratford v. Lord Alborough,
Beat. 228, 236; Cairncross v. Larimer, 13 Macq. H.
L. Cas. 827; Mayor of Colchester v. Lowten, 1 Ves. &

B. 226, 246; LeGuen v. Gouverneur, 1 Johns. Cas. 436, 502; Galena & S. W. R. Co. v. Ennor, 116 Ill. 55.

In order to constitute *laches*, it is only necessary to show that the exceptants in this case have failed or omitted to obtain knowledge of the facts when the same was obtainable. *Laches* will also be imputed where the circumstances are such which should have induced inquiry and the effort to obtain knowledge. Larzelere v. Starkweather, 38 Mich. 96; Learned v. Foster, 117 Mass. 365; Union Dime Savings Inst. v. Clark, 59 How. Pr. (N. Y.) 342; Sedlak v. Sedlak, 14 Or. 540; Bowman v. Wathen, 1 How. 189; Veazie v. Williams, 3 Story, 611.

In the application of the rule relative to the *laches*, a distinction has been made between what have been termed executed and executory interests. An executed interest is such an interest as is complete and does not require the assistance of a court of equity to create in the person of the claimant a legal right to it, but where a person is obliged to apply for the peculiar relief afforded by a court of equity to obtain a right of which he is not in possession, his interest is described as executory. In cases of executory interest, the plaintiff must come into court promptly and without unreasonable delay. 12 Am. & Eng. Encyc. of Law, 566; Hart v. Clark, 6 H. L. Cas. 633; Garden Gully U. Q. M. Co. v. McLister, L. R. 1 App. Cas. 39.

Independently of the application of the Statute of Limitations to suits in equity, by analogy or otherwise, courts of equity have usually held that delay for a period sufficient to deprive the complainant of the right to

enforce his demand in a court of law is such *laches* as will justify the dismissal of a bill in equity. Preston v. Preston, 95 U. S. 200; Dade v. Irwin, 2 How. (U. S.) 383; Sedam v. Williams, 4 McLean, 51; Blanchard v. Williamson, 70 Ill. 647; Packwood v. Gridley, 39 id. 388; Ramsey v. Perley, 34 id. 504; Bashor v. Cady, 2 Carter (Ind.), 582; Finney v. Harris, 30 Miss. 36; Vaughn v. Johnson, 9 N. J. Eq. 173; Lyon v. Lyon, 8 Ired. Eq. (N. C.) 201; Neely's Appeal, 85 Penn. St. 387; Bank of Gettysburg v. Thompson, 3 Grant (Penn.), 114.

Where an account settled by an executor has been allowed to remain unchallenged for a number of years, the court will not open it except upon clear evidence of fraud.

The defense of *laches* may be pleaded not only when the accounts are attacked in the Court of Chancery, but also when they are attacked in the Orphans' Court. Skinner v. Skinner, 1 J. J. Marsh. (Ky.) 594; Richardson v. Billingslea (Md.), 16 Atl. Rep. 65; Ridenow v. Keller, 2 Gill. (Md.) 134; Lenox v. Harrison, 88 Mo. 491; Bradley v. Bradley's Admr., 83 Va. 75; Lupton v. Janney, 13 Pet. 381; Gould v. Gould, 3 Story, 516; Oneill v. Hamill, Beat. 618; Yearly v. Cockey, 68 Md. 174.

WOLCOTT, CHANCELLOR.—William Allen, late of New Castle County, died in May, 1859, leaving a will, which was duly admitted to probate in said county on the 1st day of June of the same year, whereby he directed his property to remain as it was until his youngest child

should arrive at the age of twenty-one years, and then be sold and the proceeds of the sale thereof equally divided among his children or their heirs.   The Spring Grove farm, however, which he had entered into an agreement to sell, he directed, in case of a failure of the purchaser or bargainee to comply with the terms of sale, to be disposed of at the best advantage and the money secured by a loan on good security.   The clear rents and profits arising from the real estate in Wilmington he directed to be applied to the support and education of his minor children and to the payment of the annuity of $200 to his widow during her life or widowhood. James Allen, who was the youngest child of the testator, arrived at his majority the 17th day of August, A. D. 1871.   In 1870, James Leach was appointed administrator d. b. n. c. t. a. of the deceased.   On the 10th day of October, A. D. 1873, he passed a first account in which he charged himself with seven hundred and eleven dollars and fifteen cents ($711.15), and was allowed credit to the amount of one hundred and twenty dollars ($120), leaving a balance in his hand of five hundred and ninety-one dollars and fifty-six cents ($591.56).   The principal item on the debit side of the account was six hundred and ninety-three dollars and fifty-seven cents ($693.57), which was admitted to have been derived from the sale or disposition of the Spring Grove farm and the principal item on the credit side of the account was seventy-one dollars and fifteen cents ($71.15) for commissions.   On the 2d day of January, A. D. 1886, he passed another account in which he charged himself with three hundred and sixty-four dol-

lars and ninety-seven cents ($364.97) only, consisting
entirely of rents received subsequent to the passage of
the first account, and was allowed credit to the amount
of three hundred and thirteen dollars and forty-six cents
($313.46), leaving a balance in his hands of fifty-one
dollars and fifty-one cents ($51.51). One item of the
credits was thirty-six dollars and forty-nine cents
($36.49) for commissions. The exceptions were to the
commissions allowed in both accounts, namely: Seventy-
one dollars and fifteen cents ($71.15) and thirty-six
dollars and forty-nine cents ($36.49), respectively, on
the ground of fraud and mismanagement of the estate;
also, to the items of fifteen dollars ($15) and ten dollars
and eighty-six cents ($10.86), in what is called the first
and final account, because the administrator obtained a
credit therefor in the first account; also, to the neglect
or omission of the administrator to charge himself in
his second account with the unappropriated balance
shown by the first account, and also to the name or title
of the second account because it was misleading.

The defendant pleaded: First. The Statute of Lim-
itations. Second. The general issue. Third. That the
said balance of five hundred and ninety-one dollars and
fifty-six cents ($591.56) shown by the first account of
the administrator, with which he did not charge himself
in the second account, was a part of a larger sum of
money which the said defendant deposited with John
McLear & Son, reputable bankers of the City of Wil-
mington in New Castle County, and the said John
McLear & Son thereafter failed and were declared bank-
rupts in the United States court, and that the said

defendant received only two dividends, amounting to the sum of one hundred and thirty-one dollars and ninety-six cents ($131.96), with which said sum the defendant acknowledges that he is justly chargeable, together with the sum of sixty-three dollars and sixty-seven cents ($63.67), being the difference between the said balance of five hundred and ninety-one dollars and fifty-six cents ($591.56) and the sum of five hundred and twenty-seven dollars and eighty-nine cents ($527.89), which said last-mentioned sum was the amount of the said James Leach's balance in his account with the said John McLear & Son at the time of their failure. The exceptants replied substantially as follows: To the first plea, that the Statute of Limitations had not run against either of said accounts because the said James Leach did not give any notice, either verbal or written, to the said exceptants within three months, or any notice at any time after either of the same had been lodged in the proper office for inspection. To the second plea the *similiter*. To the last plea that the said John McLear & Son, with whom the said sum of five hundred and twenty-seven dollars and eighty-nine cents ($527.89) was deposited, were private bankers, and that it was deposited in his own private name as " James Leach." That by the terms of the will of the said testator his property was to remain as it then was until his youngest child arrived at the age of twenty-one years. That his youngest child was James Allen, who arrived at said age the 17th day of August, A. D. 1871, at which time the said James Leach should have paid and distributed the said sum of five hundred and

ninety-one dollars and fifty-six cents ($591.56) among the children of the said William Allen, the testator. But instead thereof the said James Leach, though he had said sum of five hundred and ninety-one dollars and fifty-six cents ($591.56) in his hands on the 9th day of February, A. D. 1871, yet he wrongfully permitted the sum of five hundred and twenty-seven dollars and eighty-nine cents ($527.89) to remain on deposit with the said private banking firm of John McLear & Son until after said firm had been declared bankrupt, to-wit, on the 10th day of November, A. D. 1873. That the said James Leach, on the failure of the said firm of John McLear & Son, appeared, claimed and proved said sum of five hundred and twenty-seven dollars and fifty-six cents ($527.56) as his own private money in his own private name. That the dividends declared by William Canby, the assignee in bankruptcy of the said banking firm, amounting to one hundred and thirty-one dollars and ninety-six cents ($131.96), were paid to and received by the said James Leach as his own private funds; and that the loaning of the said sum of five hundred and twenty-seven dollars and eighty-nine cents ($527.89) to the said private bankers and the placing of the same upon deposit with them was a clear violation of his duty as administrator and in opposition to the express terms of the will of the said William Allen, deceased, and was of itself a gross breach of trust, said will having directed that the proceeds arising from the sale of the said Spring Grove farm should be invested "in a loan on good security."

Demurrer and joinder in demurrer.

There is no dispute that the period for the distribution of the unappropriated balance shown by the first account had arrived when it was rendered and settled, and so of the balance shown by the second account. The important question raised by the demurrer is whether the Statute of Limitations is a complete bar to the exceptions filed to the accounts of the administrator, James Leach. To answer this question it is necessary to ascertain when the statutory period of limitations began, if it ever did begin. Section 6 of chapter 124 of the Revised Code provides that: "No exceptions to an account of an administrator, executor or guardian settled by the register for the county shall be received and filed in the Orphans' Court after the expiration of three years from the settlement of said account." The statute is absolute and imperative. Looking at it alone there are to be found no conditions to limit or suspend its operation except disability of infancy, coverture, or incompetency of mind. No notice, either before or after the time the account is rendered and settled, is required to be given to the parties in interest as a condition precedent to the running of the statute. The settlement is, therefore, entirely *ex parte* and the whole of the time within which competent and interested persons may assert their right to except to the account might expire, before they had received knowledge that it had been filed in the office of the register for the proper county.

While the fact that an executor, administrator or guardian is required by the law to render his accounts at stated times, of which all persons are supposed to

have knowledge, may appear to soften this harsh feature
of the statute, yet it does not, inasmuch as he may pass
accounts at longer or shorter intervals as he may deem
proper with the concurrence of the register, thus ex-
cluding this element of theoretical or constructive cer-
tainty of knowledge as to the date of the settlement of
such an account.

Standing upon the bare statute there would be an
end of all controversy. It stealthily creeps between
parties and their rights and there is no power in the
court supplied by the statute itself to arrest its motion.
But section 21 of article 6 of the Constitution of the
State provides that: "An executor, administrator or
guardian shall file every account with the register for
the county who shall, as soon as conveniently may be,
carefully examine the particulars with the proofs thereof
in the presence of said executor, administrator or guard-
ian, and shall adjust and settle the same according to
the very right of the matter and the law of the land,
which account so settled shall remain in his office for
inspection and the executor, administrator or guardian
shall, within three months after such settlement, give
notice in writing to all persons entitled to shares of the
estate or to their guardians, respectively, if residing
within the State, that the account is lodged in the said
office for inspection."

The notice required by this provision of the Consti-
tution, it is admitted, the administrator never gave; and,
so far as anything appears to the court, the exceptants
remained in ignorance of the doings of the adminis-

trator until about the time of the filing of the exceptions to the accounts. But to avoid the effect of such neglect of duty, the defendant's solicitor contended with much zeal that to allow the statute to be controlled by the Constitution, so far as to fix the date of such notice instead of the date of settlement as the time at which the period of limitation would begin, would amount to a judicial abrogation of the legislative will.

This is a very extraordinary proposition. It involves the assumption that the Legislature may abridge or annul a particular rule of conduct prescribed by the Constitution. That is what it amounts to. But the reverse of this is true. The Constitution, whenever it speaks, is the supreme law, and does modify the statute in all cases where the latter interferes with or impairs the right secured by the former. At the point of conflict between the two the statute must yield. It is not necessary to indulge in any speculation or conjecture as to whether or not the Legislature intended the settlement of an administration or guardian account to be the beginning of the period of limitation, because it makes no difference whether it did or not.

The plaintiffs, relying upon the provision of the Constitution in question, claim that their right to take this proceeding is not barred because no notice as therein required was ever given, and the defendant, relying upon the statute, claims that it is barred because more than three years have elapsed since the settlement of either account and before the filing of their exceptions. The Constitution and the statute together, therefore, constitute the law that governs this case as much as if

they were both embodied in a single enactment; they are *in pari materia* and must be construed together. The Legislature could not dispense with the necessity of such notice in order to give effect to the literal terms of the statute; neither can the court. The Constitution imposes a duty; the statute confers a privilege upon the same person acting in a fiduciary or representative capacity. Now, if an executor, administrator, or guardian, who is in a certain sense a trustee, may interpose the Statute of Limitations against a proceeding of this kind with the confession upon his lips that he has disregarded the duty enjoined by the Constitution, then the manifest purpose thereof would be defeated.

The object of the notice is that the parties interested in his accounts may have an opportunity to investigate the same before their rights are extinguished by the lapse of time or rendered valueless by insolvency or other circumstances. If this is not its object, we might explore the breast of the framers of the Constitution in vain to find one.

Seeing, then, what an important part this duty plays in effecting the ends of justice between parties situated like these, the question naturally arises as to the best and most effectual way of enforcing its observance. The only practical mode that suggests itself to the mind is to deny the enjoyment of the privilege associated with the duty until its performance is clearly shown. I am, therefore, of the opinion that the defendant is not protected against this proceeding by the shield of the statute.

Another good reason might be assigned for requiring the performance of the duty before the privilege or protection granted by the statute should be available, and that is that the matters inquired about partake very much of the nature of the subjects within the limits of equity jurisdiction. The Orphans' Court, sitting as a court of review of proceedings in the register's office involving matters of a trust character, to a certain extent, exercises the functions of an equity court. Now, one of the requisites to a correct status in a court of equity is the clean-handedness of the party invoking its aid. In such a court an old maxim is that " He who asks equity must do equity." The hands of the administrator are anything but clean. He seeks the protection of the statute when it is admitted that he has violated the plain duty imposed by the Constitution. He cannot, therefore, be helped by this court.

The fact that the administrator lost the greater part of the fund in his hands by reason of the failure of McLear & Son does not constitute a valid and meritorious defense *pro tanto* to this proceeding. He had no right to deposit the money belonging to the estate with private bankers to his individual credit, nor in fact with any banking institution in that way. When he placed the money to his own credit he elected to take the responsibility for its safe-keeping; besides, there was no time after the settlement of the first account when the money was not payable to the parties entitled, as the youngest child of the testator had reached his majority, the period fixed by him for the distribution of the same

under the terms of the will. Again, if there had been
a sufficient reason for not distributing the estate as di-
rected by the will, he should have secured it by loan
on good security as therein provided. The adminis-
trator having disregarded his duty in this respect, he
cannot set up the loss of the money as before mentioned
to the claim made by the exceptants. Then, as to com-
missions, they should be forfeited for the same reason.
The second account should, therefore, be surcharged
with the unappropriated balance shown by the first ac-
count plus the commissions allowed in said first account,
with interest from the date of its settlement. The com-
missions allowed in the second account must also be dis-
allowed and the items duplicated from the first account
eliminated. Let the order or decree be drawn in con-
formity with this opinion.