Booth and others, Appellants, vs. Wilkinson, Guardian, Respondent.

*January 17 — February 3, 1891.*

*Guardian and ward: Deposit of trust funds: When loss falls on depositor.*

A guardian who takes a certificate of deposit of his wards' money in his own name, with nothing to distinguish it as belonging to the wards, must himself bear the loss occasioned by the failure of the bank, even though he acted in entire good faith.

APPEAL from the Circuit Court for *Grant* County.

The facts are stated in the opinion.

For the appellants there was a brief by *Ed. M. Lowry* and *Bushnell & Watkins*, and oral argument by *R. A. Watkins* and *A. R. Bushnell*. They cited 1 Perry, Trusts, secs. 443, 463; Flint, Trusts, sec. 164; Lewin, Trusts, *295–6; 75 Am. Dec. 804, note; *Williams v. Williams*, 55 Wis. 300; *Lunham v. Blundell*, 4 Jur. (N. S.), 3; *Comm. v. McAlister*, 28 Pa. St. 480; *S. C.* 30 id. 536; *Jenkins v. Walter*, 8 Gill & J. 218; *In re Stafford*, 11 Barb. 353; *School Dist. v. First Nat. Bank*, 102 Mass. 174.

*W. E. Carter*, for the respondent, contended, *inter alia*, that the true rule, deducible from all the cases, is that when the act of the trustee is unequivocal in character, and itself amounts to an actual conversion of the funds, the loss, if any, must be borne by him; but when the act is not so unequivocal, although if unexplained it might be consistent with an intention to convert the funds, if the explanation

or proof is furnished contemporaneously with the act or before the loss occurs, showing unequivocally that there was no such intention, the loss does not fall upon the trustee. Simply taking a certificate of deposit, or even a promissory note, in the individual name of the trustee, is not conclusive evidence of an intention to convert the fund and does not make him liable for the loss. *Knight v. Earl of Plymouth,* 1 Dickens, 120; *S. C.* 3 Atk. 480; *Parsley's Adm'r v. Martin,* 77 Va. 376; *Beasley v. Watson,* 41 Ala. 234–239; *Bank v. Coleman,* 20 id. 140; *McTyer v. Steele,* 26 id. 487; *Davis v. Harman,* 21 Gratt. 194; *Pidgeon v. Williams,* id. 251; *Cooper v. Cooper's Ex'rs,* 77 Va. 198; *Adams v. Claxton,* 6 Ves. 226; *Rowth v. Howell,* 3 id. 565; *Seawall v. Greenway,* 22 Tex. 697, 75 Am. Dec. 803, and note; *Brown v. Dunham,* 11 Gray, 42.

ORTON, J. The appellants are the heirs at law of William Booth, deceased. Two of them are of age, and one still a minor who appears by guardian *ad litem.* The respondent was their general guardian. Their mother, Mrs. Booth, had removed to Nebraska with her children, and had there been appointed guardian of the one infant heir, and the moneys belonging to the heirs had been sent to her there, by the respondent, when received by him. The respondent had sold a farm belonging to their estate, as guardian, to one Hilton, for about $11,000, on notes secured by mortgage, all of which, and interest thereon, had been paid to the respondent, except the last two, amounting to $2,000, and the money had been sent to Mrs. Booth, in Nebraska. The respondent had been notified by the county judge to make final settlement of his guardianship on the 12th day of February, 1884, and he therefore called on Mr. Hilton to pay the last two notes, and Hilton looked around to borrow the money, and said that he could get it of one Mr. Harmes. Harmes called on the respondent on the 20th or 22d of Jan-

uary, to see in what shape he wanted the money. Harmes said it was in the Platteville Bank, and the respondent said: "If it is in the bank, it would be best to leave it there;" and that he would not want it until February 12th, the time of such settlement, and that he would then have to get a draft to send to Mrs. Booth, and it would be right there. Harmes then got a certificate of deposit, and turned it over to Hilton, and Hilton delivered it to the respondent on the 28th day of January, 1884. The following is a copy of the certificate: "Platteville, Wis., January 24, 1884. John Harmes has deposited in this bank two thousand dollars, payable to the order of *David Wilkinson* in current funds, on the return of this certificate properly indorsed. [Signed] O. F. GRISWOLD, Cas." The respondent held the certificate for the purpose of having it present on the 12th or 13th day of February, the day of final settlement. On the 8th day of February the bank broke, and the money was lost. On said settlement the respondent was credited and allowed by the county court this $2,000. On appeal to the circuit court said judgment was approved by proper findings of fact and conclusions of law, and from that judgment this appeal is taken.

I have stated the facts about the delivery of the certificate according to the testimony of the respondent. This statement of the facts relates only to this certificate of deposit, as this is the only subject of contention on this appeal. I have stripped the case of everything not material to the only question on this appeal. Nothing omitted would affect the question. It does not appear that the respondent directed how the certificate of deposit should be drawn, but he knew when he received it how it was drawn, and accepted it in its present form. He knew that the deposit stood on the books of the bank to his own personal credit. It could not be known by the books of the bank that this was trust money, and not his own. The rule may

be technical and arbitrary to some extent, but it is based upon the soundest principles of business economy and integrity, and approved by the highest courts of this country and of England with such a unanimity of judgment as to make it an established principle of law, that if a guardian deposits the money in his hands belonging to the heirs in a bank in his own name and to his own credit, without any ear-marks or *indicia* to distinguish it as the money of the heirs or of the estate or trust funds, and the bank fails, it will be held to be his own personal loss, and not that of the heirs. No circumstances will justify it if such is the character of the deposit. It is not a question of good faith or of integrity — it is a question of naked fact — which determines its legal character.

The reason of the rule is obvious. The following extract from the opinion of Judge PORTER in *McAllister v. Comm.* 30 Pa. St. 536, expresses, once for all, the rule, and some of the reasons of it: "If he [the trustee] undertakes to make a deposit in a banking institution, the entry must go down on the books of the institution, in such terms as not to be misunderstood, that they are the funds of the specific trust to which they belong. He cannot so enter them as to call them his own to-day if they are good, and to-morrow, if bad, ascribe them to the estate, or shift them in an emergency from one estate to another, or by the deposit secure the discount of his own note, and have the deposit snatched at by the bank if the note be not paid, or attached by a creditor as the depositor's individual property. . . . No matter what he intends to do, or what the cashier or clerk may think he is doing, the deposit must wear the impress of the trust, or he cannot, when brought to account, call it trust property." This was the exact condition of this fund, and all the reasons of the rule are applicable to it as the personal and individual deposit of the respondent. The rule is inflexible, and there is not in this case a single circumstance which makes the rule inapplicable to it.

This is all that need be said in this case, for this court has sanctioned the rule in a recent case, where the depositor informed the teller of the bank, who gave the certificate of deposit, that they were *trust* funds and did not belong to him. In *Williams v. Williams*, 55 Wis. 300, Mr. Justice CASSODAY marshaled and passed in review the leading authorities of this country and of England, and sanctioned the rule in a case that rules this in all essential particulars. The loss in this case was that of the respondent, and not that of the heirs or their guardian in Nebraska; and therefore the respondent should be charged with this $2,000 in the settlement of his guardianship.

*By the Court.*— The judgment of the circuit court is reversed, and the cause remanded with direction for further proceedings in accordance with this opinion.