NELSON WESTOVER, ADMINISTRATOR, v. WALTER CAR-
MAN'S ESTATE.

FILED OCTOBER 7, 1896. No. 6799.

1. **Executors and Administrators:** FINAL ACCOUNT: RECEIPTS. In the final accounting of an administrator the beneficiaries of the estate are not bound by the terms of receipts presented by the administrator. They may be heard on the accounting to deny the fact that payments were made as shown by the receipts.

2. ——: ——: ——. An administrator presenting in support of his final accounting receipts of a distributee of the estate, such distributee may oppose the allowance of credits thereon on the ground that the receipts were obtained by fraud and payments not made as shown thereby.

3. ——: ——: COMMINGLING FUNDS: INTEREST. An administrator who has mingled the funds of the estate with his own and used them for his own benefit is chargeable with interest thereon.

4. ——: ——: ——: ——. The same rule obtains where he has mingled the funds with those of strangers in his possession and under his control; and where they have been deposited in bank to the credit of such strangers he may be charged with interest al-

though it does not appear that he derived individual benefit there-from.

5. ——: ——: ——: ——. Evidence examined, and *held* to sustain the action of the trial court in disallowing certain items in an administrator's account and charging him with interest on funds in his possession.

ERROR from the district court of Lancaster county. Tried below before HALL, J.

*James E. Philpott* and *E. H. Wooley,* for plaintiff in error.

*Ricketts & Wilson* and *A. G. Greenlee, contra.*

IRVINE, C.

Westover was appointed administrator *cum testamento annexo* of the estate of Walter Carman. It would seem that he was removed, but this fact appears merely inferentially in the record. On the coming in of his account there was a hearing in the county court and certain credits claimed by him were disallowed; and he was charged with interest on moneys in his possession. He appealed to the district court, where a decree was rendered substantially conforming to that in the county court. From this decree he prosecutes error.

In the brief only three items are discussed,—a charge of interest and the disallowance of two groups of vouchers. One of these groups is described as vouchers "5, 6, 8, 18, 19, 26." By the bill of exceptions we are informed that at the commencement of the trial in the district court the plaintiff in error made the statement that "as to the appeal taken from the court below on vouchers 5, 6, 8, 18, 19, 29, and $6.70 of No. 36, amounting to the sum of $123.84, the defendant does not prosecute, but will allow them as found by the court below." In the face of that statement, made of record, we cannot review the finding of the district court on the items so allowed by the appellant. It will be observed that, in the brief, complaint is made of voucher 26, which is not included in the admission of record. It is of the same character and stands

upon the same ground as some of the other items. There is probably an error either in the admission or in the assignment of error; but the voucher referred to being of the same class as others admitted to have been properly disallowed, we shall not disturb the finding of the trial court.

The second class of vouchers rejected and disallowed were certain ones given by the widow of the decedent, purporting to be for money paid by the administrator to her,—two of them for maintenance, two for claims against the estate, and one for her distributive share. These amount to $3,150.89. It is admitted that no money was paid when these vouchers were obtained, nor did they represent money paid in the past. The administrator contends, however, that the widow preferred to have her share in interest bearing securities, and that, therefore, promissory notes of different persons were turned over to her in lieu of money, she knowing and consenting to this arrangement. On behalf of those opposing the allowance of the account, to-wit, the widow and the other distributees of the estate, it is claimed that the vouchers were obtained by fraud, and that neither money nor notes were in fact delivered to her, and the notes which it was proposed to deliver were not the property of the estate and were worthless. The administrator argues, first, that in this proceeding the parties are bound by the terms of the vouchers, and if they are in fact genuine receipts the administrator is in his accounting entitled to credit therefor, leaving the person giving the receipts to a personal action against the administrator; second, that the finding of fact is wrong; and third, that in no event should the administrator be charged with the amount of these vouchers unless the notes are returned. These arguments we shall take up in their order.

We think this is an appropriate proceeding in which to determine the validity of the alleged contract between the widow and the administrator and the fact of its execution. Had the transaction been with a stranger to the

estate, who had not repudiated the contract, there might be force in the suggestion that in the absence of a rescission carried into effect, other parties could not avoid the administrator's contract. But the widow was an heir and legatee under the will; indeed, she was an executor and qualified as such, although the proof shows that Westover, as administrator, actually conducted all the business of the estate. Were she to remain passive and permit Westover's account to be settled on the basis of payments to her as shown by the receipts, it is doubtful whether she would not in a subsequent action be estopped to repudiate the transaction. Her dealings as widow and legatee with Westover were in his representative capacity and were with the estate. A receipt, which is simply a receipt and not a contract, is disputable, and the parties thereto are not concluded by its terms. If the receipts did not represent payments to her, or if they had been obtained by fraud, she was not bound and still had her claim against the estate. The administrator was not discharged from liability on that account; and therefore on his accounting not only the genuineness of the vouchers, but the fact of his having discharged the liability of the estate to the person giving the vouchers, were appropriate subjects of investigation.

We think, also, that the finding of fact was supported by the evidence. There is evidence tending to show that there existed a firm known as Fisher & Westover, comprised of John Fisher and Jennie Westover, Jennie Westover being the wife of the administrator; that the business of this firm was conducted by the administrator; that the moneys accruing to the estate were either carried in his own pocket or deposited to the credit of Fisher & Westover in the bank account of that firm, which was under the control of the administrator. For a long time prior to the alleged settlement with the widow, a large sum of money belonging to the estate had been in the hands of the administrator. The firm of Fisher & Westover was the owner of the notes in controversy. They

were delivered by Westover, with a written guaranty signed by him in the name of Fisher & Westover, to a brother of the administrator, W. H. Westover, an attorney at law. They were turned over to him for the purpose of collection, a large number of them being past due. The evidence also shows that a large number of them were absolutely worthless unless the guaranty of Fisher & Westover made them good. There is also evidence tending to show that Mrs. Carman knew of this arrangement and signed the vouchers knowing that the notes had been assigned to her and placed in the hands of W. H. Westover. She, however, flatly contradicts this and testifies that she never received any of the notes, that she never authorized their delivery to W. H. Westover, and never assented to any such arrangement. On this conflict of the evidence we must sustain the finding of the district court in her favor. No matter what she had agreed to receive in lieu of money, if the notes were not delivered to her or to some person else by her authority, no payment was ever made and no discharge effected, and this without regard to the existence of fraud in the transaction. It is true that there is evidence that she received two small sums of money from W. H. Westover, which were in fact proceeds of the collection of some of the notes. But she testifies that she did not know whence this money was derived. She was an old lady and testifies that prior to her husband's death she was wholly without experience in business affairs. The Westovers were relatives of hers. To constitute a ratification, some act must be done with knowledge of the facts. In other words, the conduct which amounts to a ratification must be such as to imply a consent to and recognition of the act ratified. It would be a harsh rule to hold that an old lady, wholly inexperienced in business, by the mere receipt of a few dollars from a brother of her husband's administrator should be held to ratify a transaction of the character which her testimony shows this to have been.

30

What we have already said practically disposes of the third argument. If she never received the notes, if they were never in the hands of her agent, she was not bound and it was not within her power to tender them back. It is shown that she did tender a written reassignment. This is all she could do. It is, perhaps, more than she was required to do. It is now claimed that the fact that she tendered a reassignment was an admission that she had received the notes; but we think not. It was at most an offer to restore the administrator to the position he would have been in had it not been for his executed but undelivered assignment of the notes to her.

This brings us to the question of interest. It is a settled principle of law that where an administrator mingles the funds of the estate with his own and uses them for his own benefit, he is chargeable with interest. (*Schieffelin v. Stewart*, 1 Johns. Ch. [N. Y.], 620; *Spear v. Tinkham*, 2 Barb. Ch. [N. Y.], 211; *Perrin v. Lepper*, 72 Mich., 454; *Estate of Clark*, 53 Cal., 355; *McCloskey v. Gleason*, 56 Vt., 264; *Hook v. Payne*, 14 Wall. [U. S.], 252.) It may be said that in this case there is no evidence that the administrator mingled the funds with his own, or that he used them for his individual gain. He himself admits, however, that he mingled them with the funds of Fisher & Westover. The beneficiaries of this estate have nothing to do with that firm and need not look to it for reimbursement. So far as the administrator is concerned, to mingle the funds of the estate with those of a stranger is the same as to mingle them with his own. The moneys were deposited in bank to the credit of Fisher & Westover. They were open to use by that firm, as well as by the administrator himself. The burden did not devolve upon the beneficiaries of showing that the administrator or Fisher & Westover had made a beneficial use of them. On this point the case of *Union Bank v. Smith*, 4 Cr. C. C. [U. S.], 509, is much in point. There it is said: "The list of balances referred to is not a list of balances in the respondent's account, but in the joint account of W. & C.

Smith with the bank.    It does not appear who W. & C. Smith were; but if it should appear that they were a mercantile firm, and that the assets were placed in the bank subject to their use and control and mingled with their funds, I should think the respondent was chargeable with interest for the whole time the money was at their disposal, although they might have always had credit enough in bank to answer for it.    It was a fund, when thus placed, which either partner had a right to draw out at any time; and it was as much liable to the creditors of W. & C. Smith as to those of S. Robertson, and perhaps more so.    If W. & C. Smith had failed indebted to the bank, the bank would have retained it, and it would have been lost to the estate of Robertson.    Although W. & C. Smith may not actually have used the money, yet it gave them credit with the bank, so that they might more readily obtain discounts."    Many of the cases hold that an administrator mingling the funds with his own is chargeable with compound interest at the highest rate allowed by law.    In this case only simple interest at seven per cent was allowed.    There was evidence justifying a larger allowance than was made.

AFFIRMED.