PETITION OF THE STATE and others (for declaratory relief).

*November 22—December 6, 1932.*

The *Attorney General* and *Fred M. Wylie,* deputy attorney general, for the state and the state treasurer.

*George A. Bowman,* district attorney, and *Oliver L. O'Boyle,* corporation counsel, for Milwaukee county and the county treasurer.

FOWLER, J.   An original action for declaratory relief is brought upon the petition of the state, the state treasurer, Milwaukee county, and the county treasurer of Milwaukee county to have the rights of the parties declared respecting liability for the state's share of income taxes paid to the county treasurer and deposited by him and frozen in county depository banks in liquidation and in banks operating on the statutory stabilization or moratorium plan.

The county treasurer is made the collector of all income taxes, forty per cent. of which are by him payable to the state, fifty per cent. to the local taxing municipality wherein the taxpayer resides, and ten per cent. is retained by the county. Sec. 71.10 (2), Stats.; sec. 71.19, Stats. He is required to account to the state and the local taxing unit for their respective portions of the income taxes collected by him (sec. 71.19 (3), Stats.), and to pay over the same fifty days from the time the taxes are due from the taxpayer. Sec. 74.26 (1), Stats. As the income taxes were paid to the petitioning county treasurer in 1932 he deposited them from day to day to his general account as county treasurer in local banks that had been duly made public depositories by the county board under sec. 2, ch. 1, Special Session Laws of 1931, creating ch. 34, Stats., sec. 34.02 of which relieves him of liability for any loss of public moneys which results from the failure or insolvency of the depository. Before the fifty days for paying over the funds had expired certain of these depositories were taken over by the state banking commissioner for liquidation, and others went under the stabilization or moratorium plan prescribed by sub. (16), added to sec. 220.07, Stats., by sec. 3, ch. 15, Special Session Laws of 1931, which postponed the collection of the deposits for three years. Of the amounts so deposited the portion belonging to the state is $304,976.95. The county or the county treasurer at no time since the closing of these banks has had money in possession sufficient to pay this amount to the state, and the county has been obliged to borrow to meet its current obligations. It has not included in the current tax levy any amount to provide funds with which to make payment to the state.

Sec. 74.66, Stats., makes the county chargeable with "all losses that may be sustained by the default of any county officer in the discharge of" his duties, and provides that the county board "shall add all such losses to the next year's taxes of . . . the county."

The statutes contain no express declaration of liability of the county for losses occurring while the funds are in the hands of the county treasurer on deposit in public depositories.

Some other statutes are referred to by counsel as bearing on the question of the county's liability. Sec. 74.27 provides that when any county shall fail to pay to the state treasurer the state tax levied upon it at the time required it shall pay to the state treasurer an additional amount of ten per cent. per annum from the time the tax was due. This section is contained, not in the chapter referring to income taxes, but in the chapter covering taxes on property.

Sec. 71.10 of the income tax law assigns to the county the penalties collected by the county treasurer on deferred payments of income taxes; sec. 71.17 (6) makes the county liable to the taxpayer for overpayments of income taxes, and sec. 71.23 provides that the county shall reimburse the county treasurer for refunds, and that the state and municipalities shall reimburse the county for their respective portion of refunds.

Sec. 71.19 provides that the county treasurer shall account for and pay delinquent income taxes collected by him as provided in sec. 74.26 (1), and sec. 71.18 (3) provides that all laws respecting collection and payment of taxes on personal property, excepting compromise and cancellation of illegal taxes, shall apply to income taxes, unless inconsistent with express provisions of the income tax law.

The main contention of the parties hinges upon the construction to be placed on the language of sec. 74.66 above stated covering losses "sustained by the default" of any officer. The state claims that the mere failure to pay over moneys at the time specified constitutes a "default," while the county claims that the default covered by the section is an unlawful act,—some misfeasance or malfeasance in office,—some omission or breach of official duty by the

county officer,—and contends that as the county treasurer's deposit of the money was lawful there was no default on his part. This court has not heretofore construed this section. Obviously the word "default" has the two meanings. One is in default when he does not for whatever reason pay money at the time required, and he defaults when he converts or misappropriates money belonging to another. The word itself applies to either or both situations. The question is what does it mean in the statute? The statute in practically the same terms occurs in R. S. 1858 as sec. 164, ch. 18. It doubtless was taken over from the Michigan statutes, and the Michigan statute which occurs to the same effect in R. S. Mich. 1846, p. 119, ch. 20, sec. 120, was construed in *People ex rel. Att'y Gen. v. Supervisors,* 30 Mich. 388, subsequent to the time it was taken over by Wisconsin. The Michigan opinion contains the statement that the language "is very broad and would seem intended to cover all possible losses that may arise from the county treasurer's default," but a later statement in the opinion referring to the provision "as precisely similar" to the one "to protect the county against the defaults and dishonesties of township treasurers" points to the interpretation that dishonest conduct of the treasurer, some breach of duty on his part, is what the statute was intended to protect against. The opening paragraph of the opinion states that the action was *mandamus* to compel county officers "to spread upon the tax rolls of their county for the current year a sum lost by the state in consequence of the failure of the late treasurer of that county to account for the moneys received at the regular tax sales for the year 1865." Examination of the Michigan statutes in force at the time the decision was rendered, sec. 858 *et seq.,* Comp. Laws of 1857, discloses that the sale of land for taxes was made by the state through the county treasurer and the moneys received therefrom were required to be paid into the state treasury, except such sum, if any, as was due from the

state to the county, and for failure to pay for thirty days from the time required the county treasurer was expressly subject to criminal prosecution under a statute penalizing "fraudulent disposition of property by agents" and to punishment on conviction by a fine of not exceeding $2,000 or imprisonment in the state prison not exceeding three years or both. Sec. 876, Comp. Laws Mich. 1857; sec. 36, ch. 154, R. S. Mich. 1846. From the provision last stated it would appear that the defaults of the county treasurer contemplated by the Michigan statute from which sec. 74.66 is derived were acts of conversion or embezzlement, and not mere defaults in paying over money that he was for no fault of his own unable to pay. It is to be inferred that when one is subject to criminal prosecution the acts subjecting him to prosecution are of criminal nature.

We have no doubt that the act of the county treasurer involved in the Michigan case was one of dishonesty and that the word "default" occurring in the statute should be construed as referring to some act of dishonesty. If the word had that meaning in the statute when it was taken over by our state, it has that meaning still.

The county treasurer of Milwaukee county has done no act in violation of statute. If he did any wrong at all it was in keeping the portion of the income tax payable to the state in his general account as county treasurer, instead of depositing it in a separate account designating it as money belonging to the state. The state invokes the rule that where an administrator or guardian or other trustee deposits trust funds in a bank in his own account, instead of designating the account as one in his capacity as trustee, and the bank fails, the loss falls upon the trustee. *Williams v. Williams,* 55 Wis. 300, 12 N. W. 465, 13 N. W. 274; *Booth v. Wilkinson,* 78 Wis. 652, 47 N. W. 1128; *O'Connor v. Decker,* 95 Wis. 202, 70 N. W. 286. But we are of opinion that this rule does not apply to the county treasurer, and if not to the

county treasurer it does not apply to the county. The language of sec. 34.02, Stats. (ch. 1, Special Session Laws 1931), is very broad: "Notwithstanding any other provision of law" any county treasurer depositing any "public moneys" in any public depository is relieved of liability for the money, and the term "public moneys" is declared to include "all moneys coming into his hands by virtue of his office without regard to the ownership of the moneys." This implies that the county treasurer may deposit state moneys coming into his hands in his official capacity in any depository regardless of its ownership and justifies his depositing it as he did. We conclude that the county is not responsible under sec. 74.66 for moneys lost through lawful acts of the treasurer. If liability exists it must rest on other statutory provisions or general propositions independent of sec. 74.66.

The state contends that the county is absolutely responsible for the state property tax levied against a county and is subject to the same liability for that portion of the income tax collected by the county treasurer apportioned to the state by the legislature. That the county is so responsible for the state tax levied by the secretary of state the county does not dispute, and this liability seems to be imposed by sec. 74.27, which specifies the method of enforcing the liability as to include any deficiency of one year in the next year's state tax levy against the county. The state's claim that the income tax apportioned to the state is a like liability is based in part on sec. 71.18 (3) to the effect, so far as here involved, that all laws not in conflict with the provisions of the income tax law applicable to the assessment, collection, and payment of taxes on personal property shall apply to the income tax. It is to be noted that personal property taxes, not the state tax levy against the county, is the subject of this statute. There is no provision in the statutes rendering the county responsible to the state for personal property taxes. The responsibility of the county for the state tax is for the amount of

that tax levied, regardless of whether it is paid on personal property or real estate. Sec. 71.18 (3) refers to the method of collecting the personal property tax from the taxpayer and the method of enforcement against him, not to the responsibility of the county to the state, or the method of payment of the state tax by the county to the state. We see nothing in this statute laying responsibility for the state's portion of the income tax upon the county.

Originally the income tax was collected by the local tax collectors and remitted and accounted for in the same manner that property taxes are remitted and paid, but by ch. 57, Laws of 1925, which may be found as sec. 71.19 (1), Stats. 1925, the legislature expressly provided that delinquent income taxes were not to be charged to the county nor credited to the local unit. Afterwards, as income taxes were slower in coming in than property taxes, a special provision as to time of payment of the state's portion by the county treasurer was added which reads that the county treasurers "shall pay to the state treasurer the amount .of the income taxes charged to their respective counties" under the statutory apportionment provision on or before May 1 of each year, instead of on or before the second Monday of March, as in case of property taxes. This statute, sec. 74.26 (1), now reads as follows:

"The several county treasurers shall pay to the state treasurer, the amount of state taxes charged to their respective counties, on or before the second Monday of March in each year. They shall pay to the state treasurer and to the local treasurers the amount of income taxes collected by their respective counties under the provisions of chapter 71, within fifty days after the first day upon which the same became due and payable."

The phrases "charged to their respective counties" and "collected by their respective counties" are the only expressions to be found in the statutes tending in any way to

indicate that the county is responsible or liable to the state for the state's portion of the income tax collected by the county treasurer. The word "charged" is reasonably construed as a mere bookkeeping expression, and the phrase "collected by the county," if taken as designating the county as distinguished from the county treasurer as the tax collector, does not impute absolute liability for the tax collected. So taking it, it designates the county as the agent of the state in collecting the taxes, and an agent is not chargeable with losses that occur through no misconduct or negligence of his own. As to the word "charge," no charge is in fact made by the state against the county or the county treasurer upon the preparation or filing of the income tax roll. Such charge as is therein made is against the individuals against whom the tax is extended. The state knows nothing of and can make no charge of income taxes against the county until receiving a report from the county treasurer of the amount of income taxes collected. This is entirely different from charging the amount of the property tax levied by the state against the county. We cannot consider the use of these phrases as indicating an absolute liability of the county to the state. We therefore cannot read into the statutes as they now exist or have existed a provision that the county is liable to the state for income taxes collected by the county treasurer unless the same shall have been lost through the latter's default as that term in sec. 74.66 has been above construed.

We are constrained to hold to the view expressed as to the town treasurer's relation to the county in the matter of collecting and transmitting taxes in *Westboro v. Taylor County,* 90 Wis. 355, 63 N. W. 287, that the county treasurer acts as the agent of the state in collecting the state's portion of the income tax. The income tax, like the county tax involved in the *Westboro Case,* is due from the taxpayer. The state's portion, as is the town's portion, is not due from the county but from the taxpayers. As "for the

purpose of collecting the county taxes the town treasurer acts for the county" and "is the agent of the county for that purpose," as stated in the *Westboro Case,* so does the county treasurer act for the state in the collection of the state's portion of the income tax and is its agent for that purpose. The county treasurer was of course the agent of either the county or the state in the collection of the state's portion of the income tax. It was held by the federal circuit court of appeals in *Schlesinger v. County of Milwaukee,* 42 Fed. (2d) 21, 26, that in collecting the inheritance tax involved the county treasurer was not the agent of the county in receiving the state's portion of the inheritance tax. If so, he was the agent of the state in that matter; and if that be so, by the same token is he the agent of the state in the collection of the state's portion of the income tax.

Counsel for the state criticise the statement in the *Westboro Case* above referred to and say that it is contrary to the great weight of authority. The decisions of several states are cited as to the contrary of the *Westboro decision.* Some are cited by counsel for the county as sustaining it. The bearing of these decisions upon the point could only be ascertained by study of the entire body of the taxation statutes of the several states, which would impose a burden we have neither time nor inclination to assume. Some decisions of our own court are cited as bearing upon the question and those we have examined. In *State ex rel. City of Sheboygan v. Sheboygan County,* 194 Wis. 456, 216 N. W. 144, the city brought *certiorari* to review the action of the county board in levying a tax for highway purposes. The court held that the city had no interest in the matter and was not entitled to bring the action. In course of the opinion the court makes the statements that "the city was only one of the agencies through which the county collected the tax" and that "the general tax is not a debt against the city." The last statement is more against the state's contention than

the first is for it. But we do not consider the first statement of great force either way, because the court's attention was not devoted to the question of agency. It was devoted to the question of the city's right to sue, and the city had no right to bring suit unless the collection of the tax created a debt of the city to the county. In *Appleton v. Outagamie County*, 197 Wis. 4, 14, 220 N. W. 393, the city sought to have the action of the county board in levying a tax for highway purposes set aside as fraudulent. It was held the city had no right to maintain the suit, and was stated in course of the opinion that "the city officers, . . . so far as their duties relate to the collection of state and county taxes, act for and on behalf of the state and county." This is in line with the *Westboro Case.*

In *State ex rel. Sheboygan County v. Telgener,* 199 Wis. 523, 526, 227 N. W. 35, the county brought *mandamus* to compel the city treasurer of Sheboygan and other city officers to turn over to the county the county highway tax collected by the city treasurer. The county prevailed. In course of the opinion it is stated that "The city had no interest in the fund, and is not properly the custodian of the fund." This affords no aid to the state's contention. The whole case goes on the proposition that the city treasurer, not the city, is responsible for the turning over of the fund and that he, not the city, is acting for the county in the collection of the tax.

A case decided November 9, 1932, *County of Sheboygan v. City of Sheboygan,* 209 Wis. 452, 245 N. W. 87, and *State ex rel. Donnelly v. Hobe,* 106 Wis. 411, 82 N. W. 336, are also called to our attention, but we perceive nothing in the issues involved or the opinions in those cases that bears upon the proposition under consideration.

The state suggests that as it cannot be sued without its consent the county or county treasurer cannot by counterclaim or setoff relieve themselves from liability for moneys

owing them to the state. We see no reason to consider this question. All the parties have asked for is a declaration of their rights and relations under the existing facts stated, and we comply with their request.

We are therefore of opinion that the county of Milwaukee is not obligated to pay to the state the amount of the state's portion of the income tax or any part thereof deposited by its county treasurer in public depositories and there now impounded, and that the county treasurer of Milwaukee county is absolved from liability for said funds by his deposit thereof in public depositories, until the same or some part thereof be paid back to him by the said depositories or the liquidating officers thereof, when he will become responsible for such funds as are so paid back to the same extent that he was responsible therefor on their collection in the first instance.

*By the Court.*—Judgment is entered accordingly.