·IN RE ESTATE OF CHARLES BOSCHULTE.
FRED BOSCHULTE ET·AL., APPELLEES, v. H. W. SCHOETTGER,
EXECUTOR, APPELLANT.

FILED JANUARY 31, 1936.   No. 29444.

Montgomery, Hall & Young, for appellant.

Harry E. Stevens and Abbott, Dunlap & Corbett, contra.

Heard before GOOD, EBERLY and DAY, JJ., and RAPER and PROUDFIT, District Judges.

EBERLY, J.

This action comes to this court as an appeal by H. W. Schoettger, late executor of the last will and testament of Charles Boschulte, deceased, from adverse rulings of the district court for Washington county made on two items in his final report in that capacity, viz., appellant charges that the district court erred in charging "H. W. Schoettger, executor, with money of estate claimed (by him) to have been invested in Jungbluth loan in the sum of $5,000," and likewise erred in charging him "with advancements to the Equitable Investment Corporation in the sum of $1,200," alleged to have been made for the proper protection of the interests of the estate in this $5,000 asset.

It is the contention of the objectors that this Jungbluth note and mortgage were not owned by Charles Boschulte, Sr., at the time of his death, and that in no event do these items constitute a proper credit, but that the action of the district court in charging the late executor with them was in all respects justified by the evidence in the record.

It may be said that the final order of the district court merely adjudged that, with reference to the two items above referred to, the appellant "should be charged therefor." There is no special finding of facts, and the reasoning upon which the trial court based its judgment does not appear from the record before us.

It appears admitted that, commencing before 1920 and covering the period of time occupied by the transactions relating to this claim, H. W. Schoettger was the owner of a large block of stock in, and the managing officer of, the Arlington State Bank of Arlington, Nebraska; that Charles Boschulte died in the state of California, at the age of 80 years, on October 14, 1928, testate, and by his last will H. W. Schoettger was named as sole executor thereof. The deceased was born in Germany and came to this country at the age of 6 years. He served in the Civil war and settled in Washington county at the termination of that conflict. He continued to farm from the date of his arrival until his removal to California in 1920. Henry W. Schoettger was a brother-in-law of Charles Boschulte, and when the latter removed to California in 1920 he appointed Schoettger as his agent, and all his property in Nebraska was then entrusted to and thereafter managed by the brother-in-law as such agent, until the death of his principal in 1928. The will of the deceased was duly filed in the county court of Washington county, Nebraska, on December 6, 1928. On January 5, 1929, this will was, on the petition of H. W. Schoettger, duly admitted to probate. Thereupon Schoettger qualified by taking the oath and giving an approved bond as required by law, which was properly filed on January 11, 1929. His final report as executor was made and filed on April 24, 1933. See, however, Comp. St. 1929, sec. 30-611. Objections to this report were presented in the county court, and from the adverse order of the county court Henry W. Schoettger appealed to the district court for Washington county, where a trial was had which resulted in findings and judgment against him, and the same are now presented for the consideration of this court.

It also appears that on March 24, 1933, Henry W. Schoettger was removed as executor of this estate, and Philip O'Hanlon was duly appointed as administrator with the will annexed, and he thereupon gave bond and qualified as such, as by law provided.

The present litigation arises out of a series of connected

transactions commencing during the lifetime of Charles Boschulte, when the relation existing between him and Schoettger was that of principal and agent, and which were concluded after Schoettger became the executor of the last will of Boschulte. As to the manner of conducting this business, both as agent and as executor, Schoettger testifies: "Q. Now, Mr. Schoettger, what record do you have showing the investments that you made for Mr. Boschulte during his life? A. I have no records. Q. Did you keep any record at all of the way in which you handled his money and investments you made for him during his life? A. No, I did not. Q. Did you keep any record of the interest you collected for him? A. Only as I sent him a statement of his account. Q. How often would you send them to him? A. Once and twice a year. Q. Send them to California? A. Yes, sir. Q. And do you have copies of those statements? A. I have not. Q. Did you keep copies? A. I did not. Q. Do you have any record of any kind showing the transactions between yourself and the Arlington State Bank and Mr. Charles Boschulte during his life? A. The only record I have is Mr. Boschulte's ledger sheets."

The ledger sheets of the Arlington State Bank were introduced in evidence, and purport to show only the amounts and dates of deposits made, and the amounts and dates of withdrawals therefor, together with daily balances in the "Boschulte account." These records, given full force and effect, in no manner qualify the testimony of Schoettger above quoted. We are thus restricted in our sources of information as to the actual facts of the transactions involved to the testimony of Schoettger, unaided and unsupported by the usual contemporaneous records, but to be considered in the light of the circumstances disclosed in the bill of exceptions.

As applicable to the condition here disclosed, the general rule appears to be: "When the agent voluntarily admits the receipt of the property or money, the burden of showing that he made a proper disposition of it rests upon the agent. In making this showing, moreover, the agent must

be ready with vouchers and particulars; he cannot compel the principal to be satisfied with the agent's general statement, even under oath, that he knows he made a proper disposition of it, though he cannot give particulars. Moreover, the agent's failure to keep correct accounts, in violation of his obvious duty, 'authorizes,' it is said, 'unfavorable inferences, and subjects him when called on for an account to a heavy burthen of suspicion as well as of proof.' " 1 Meecham, Agency (2d ed.) 981.

In this situation Schoettger testifies that the first Jungbluth note was an unsecured obligation and was the property of the Arlington State Bank; that certain moneys belonging to Boschulte were collected by him as agent, which his principal directed him to invest. While the exact time is not definitely established, it appears that about the year 1923, as such agent, Schoettger purchased from the Arlington State Bank, in which he was then a large stockholder and the managing officer, the Jungbluth note of $5,000 and placed it in the "Boschulte box" then kept in that bank, and to which the bank employees at all times had access. There are no records in the bill of exceptions corroborating these facts, and we necessarily infer that no bank records embodying the same now exist. It thus appears without dispute that Schoettger wholly failed to properly discharge his duties to his principal. See 1 Meecham, Agency (2d ed.) 970-972.

Nevertheless Schoettger testifies, with reference to the acquirement of this first note of $5,000, that, regardless of how or when the note got out of the bank, money from the Boschulte property in the sum of $5,000 went into the bank, and the note came out of the bank.

The record further discloses that on October 11, 1926, Julian E. Jungbluth and wife executed and delivered to the Arlington State Bank a real estate mortgage for $12,195 covering certain lands in Washington county, Nebraska, subject to two first mortgages to the Lincoln Joint Stock Land Bank, evidenced by three promissory notes of even date, all payable to the Arlington State Bank on October

11, 1936. It is evidently the theory of appellant that the evidence establishes that the unsecured $5,000 Jungbluth note, then owned by Boschulte but by its terms payable to the Arlington State Bank (but not bearing the indorsement of that institution), had been withdrawn from the "Boschulte box" by the agents of the bank, surrendered to the maker, and the $5,000 note secured by this second mortgage payable in 1936 as a renewal had been substituted therefor. In this connection Schoettger testifies as follows: "Q. You did not indorse the notes at all? A. No, sir. Q. What did you do with that original note in 1923 when you said it came out of the bank? A. Turned it over to Mr. Boschulte—Mr. Boschulte's files. Q. Well, you mean you just took it and put it in his box? A. I just took it and put it in his box. Q. And that is the only indication that it belonged to him? A. Yes, sir."

However, the archives of the Arlington State Bank contain no records which tend to substantiate this testimony as to this second $5,000 note. It does not appear that Boschulte, who was a resident of California, ever received any interest on this investment, and Schoettger appears to be unable to show, either from bank records or otherwise, any remittance to him or credit to his account covering any interest on this note. It stands admitted that there was no record or entry on the books of the Arlington State Bank or anywhere else that this note and mortgage, in whole or in part, had ever been transferred to Charles Boschulte, or belonged to him during his life, or to his estate after his death. Neither do any facts appear in the record from which it can be inferred that Boschulte ever saw the note thus claimed to have been purchased in his behalf, or knew the form thereof, or the form of the renewal note, or that he ever knew or had reason to believe that these obligations were at all times by their terms payable to the Arlington State Bank and had never been indorsed or assigned to him in writing by that institution.

On December 8, 1928, the Arlington State Bank commenced a proceeding to foreclose the real estate mortgage

executed and delivered to it by Jungbluth and wife. In this petition the Jungbluth note of $5,000 here in suit is set forth as the property of the Arlington State Bank, and a foreclosure and sale of the mortgaged premises were prayed for to secure the payment thereof. No outstanding interest on the $5,000 is in any manner alleged. It will be noted in this connection that Charles Boschulte departed this life on October 14, 1928; that his last will had been filed in the probate court of Washington county accompanied by a petition of H. W. Schoettger, named in said will as executor, for the due probate of the same; and that said will was duly admitted to probate on January 5, 1929; that the official oath as such executor was executed on January 5, 1929, and his official bond was approved and filed on January 11, 1929. A decree of foreclosure and sale was duly entered in the foreclosure proceeding of Arlington State Bank v. Jungbluth et ux. for the sole benefit of the plaintiff bank on January 14, 1929. It appears that subsequently a sale was had pursuant to this decree, and the mortgaged premises bid in by the plaintiff bank; that by order of the district court for Washington county duly made on December 16, 1929, this sale was confirmed and a deficiency judgment in favor of the Arlington State Bank and against the Jungbluths, makers of the three notes there in suit, was entered on December 16, 1929, for the sum of $4,584.71.

Thereafter in February, 1930, the Arlington State Bank settled the judgment of $4,584.71 with the judgment debtors for $1,000; released a chattel mortgage which it held to secure the indebtedness merged into the judgment, and finally discharged the judgment debtors from further liability thereon. No part of this $1,000 thus received by the bank was paid to the Boschulte estate.

Schoettger testifies in this connection, as follows: "Q. Did you make any report to the heirs at that time? A. I did not. Q. What did you do with the $1,000? A. It was turned over to the bank. Q. The bank got all of it? A. Yes, sir."

In passing, it may be said that while the compromise of

the deficiency judgment appears to have been effected by Schoettger, then managing officer of the bank, if it was intended to include a compromise of the interests of the Boschulte estate in that obligation, the action taken it appears was not "with the approbation of the judge of the county court" (Comp. St. 1929, sec. 30-410), and was not one which Schoettger as executor was then authorized and empowered to perform.

Notwithstanding the requirement that "every executor * * * shall, within three months after his appointment, make and return, under oath, into the county court from which he received his letters, a true inventory of the real estate, and of all the goods, chattels, rights and credits of the deceased which shall have come into his possession or knowledge" (Comp. St. 1929, sec. 30-401), it was on February 21, 1930, more than thirteen months after his appointment and qualification, that the first inventory of the estate of Charles Boschulte was filed by H. W. Schoettger as its executor. There was included therein the following entry: "Note J. E. Jungbluth, interest from Oct. 13, 1926, at five per cent." This appears as the first public record made by Schoettger, as executor, of the existence of the rights of the Boschulte estate in and to this asset thus scheduled.

It does appear in the record that the Arlington State Bank was subsequently reorganized, and the real estate obtained by it through the Jungbluth foreclosure was by it transferred to the Equitable Investment Corporation of Arlington. It further appears that this investment corporation was owned by the former stockholders and directors of the Arlington State Bank, and organized to take over the real estate formerly owned by that bank. Nothing in the conveyances by the Arlington State Bank to the investment corporation, however, discloses the existence of any interest therein vested in the Boschulte estate; but on May 12, 1932, the Equitable Investment Corporation executed a declaration of trust, which recites, with reference to the Jungbluth land hereinbefore referred to, "that five-twelfths of the interest in said land it holds in trust for

H. W. Schoettger, executor of the last will and testament of Charles Boschulte, deceased." Further, the record before us also sustains the conclusion that the first mortgage on this Jungbluth land, owned and held by the Lincoln Joint Stock Land Bank, was subsequently foreclosed, and the premises sold pursuant to such decree to the mortgagee, and the sale confirmed. As the amount realized from this proceeding was not in excess of the amount due on such decree, together with the costs of the action, no sum remained to apply on the claim of the Boschulte estate. The Jungbluth note of $5,000, therefore, ultimately proved to be worthless to the Boschulte estate.

In view of the history of this transaction, it is quite evident that the judgment of the district court is, in all respects, correct, except so far as the subject of interest is concerned.

Schoettger's admission that, as agent of the Boschulte estate, he received the original $5,000 for investment is unqualified. His testimony as to the investments made, and how these investments were handled by him, both as agent and as executor, in the light of the surrounding circumstances, in view of the burden of proof imposed thereby, presents a serious question as to whether the Jungbluth notes were at any time to be considered as the property of Boschulte or of his estate, or whether we have before us a mere excuse of an unfaithful agent and a delinquent executor. Under the practically admitted facts, however, we are impressed with the view that a decision of these questions is not necessary to the proper disposition of this case. The appellant's testimony, taken as true, is an admission that the original investment of the $5,000 was made by him as Boschulte's agent in the name of the Arlington State Bank by the purchase of an unindorsed note payable to that institution which was then largely owned and admittedly controlled by him as its managing officer. The record amply sustains the conclusion that this control thereafter exercised by appellant over this note and its renewal, by and through the Arlington State Bank, was as absolute and

unqualified as though title thereto had been taken in his own name.

This jurisdiction appears committed to the view that where a trustee actually deals with his trust in the name of another, or by means of an agency which he himself controls, he will be deemed to have transacted the business as in his individual name and as an individual. *In re Estate of Bush,* 89 Neb. 334, 131 N. W. 602; *Westover v. Carman's Estate,* 49 Neb. 397, 68 N. W. 501.

In the evidence before us there is no attempt to establish that Boschulte in his lifetime knew the methods followed by Schoettger, his agent, or knew the form of the obligations in which his funds were invested. It follows that Schoettger is squarely within the rule, viz.: "Unless otherwise agreed, an agent receiving or holding things on behalf of his principal is subject to a duty to the principal not to receive or deal with them so that they will appear to be his own, and not so to mingle them with his own things as to destroy their identity." Restatement, Agency, 900, sec. 398.

In a discussion of this principal in this Restatement on Agency, it is said: "Unless the circumstances indicate otherwise, it is inferred that an agent employed to act for the principal is to act in the principal's name, and is to have the title to anything obtained for the principal vested in the principal's name." Restatement, Agency, 900, sec. 398.

As to the result of the violation of this principle, the following is given in the same text as an example: "If the agent violates his duty to keep the funds of the principal distinct from his own and in the principal's name and if, while so improperly mingled or deposited in the agent's name, the fund suffers loss, whether or not the loss is due to the agent's wrongful act, he is subject to liability to the principal for the amount of the original fund with interest from the time of the breach of duty. * * * Illustration: 4. A receives money for P which it is his duty to put in the T bank in P's name. He puts the money in the T bank in his own name. The following day the bank fails. A is

subject to liability to P for the entire amount." Restatement, Agency, 900, sec. 398. See, also, 1 Meecham, Agency (2d ed.) sec. 1335.

It is obvious that when H. W. Schoettger became executor of this estate on January 11, 1929, because of the transactions heretofore narrated, there was actually due to himself as executor from himself in his individual capacity, because of his conduct above set forth, the amount of money represented by the $5,000 note secured by the Jungbluth second mortgage, with interest at the legal rate from the date thereof. Certainly as executor, in the absence of ratification by proper parties, he could do nothing by his sole act or default to divest, as against himself in that capacity, the rights of the heirs and devisees which his own default and derelictions as agent for the deceased had created. Certainly there appears in this record no sufficient evidence of any ratification binding upon the appellees in this case. 2 C. J. 719.

Under these circumstances, the general principle controlling is: "Where the obligation to pay and the right to receive are united in the same person, the law operates the appropriation of the fund to the discharge of the debt." 2 Woerner, American Law of Administration (3d ed.) 845.

This rule was expressly approved by this court in *Howell v. Anderson,* 66 Neb. 575, 92 N. W. 760, subject only to a qualification or exception therein announced and formulated. Barnes, C., author of the opinion in the *Howell* case, adopted by this court, says, in part, on this subject: "The Massachusetts rule, as we will call it for convenience, is based on a legal fiction, and the presumption that all men are solvent and able to pay their obligations. It was but a short cut to say that one who was an administrator could not sue himself, therefore he would be required to account to the estate for his individual debt as so much cash. *It was an easy way of solving a difficult problem, and one which we fully approve of, where the fact of insolvency is not satisfactorily made to appear.* In case the adminis-

trator was solvent at the time of his appointment, or any time during the administration of his office, and before his final settlement and discharge, he should be required to pay over in cash the amount of his antecedent debt. In such a case the rule contended for by plaintiff is a salutary one. It results in no hardship to any one, and for that reason should be invoked and enforced. But it seems to us that this rule should have no application where it is made to appear that the administrator was wholly insolvent when appointed, while acting, and at the time of settlement." (Italics ours.) This conclusion is also formulated in the syllabus. While the doctrine of this case may properly be said to be in the nature of a limitation on the general rule which we have quoted, it must also be conceded that, except as thus qualified or limited, the general principle is by this court approved. It may further be said that in the instant case the executor has wholly failed to carry the burden of proving facts to bring himself within this exception or limitation. In other words, there is no showing in the instant case that Schoettger, from the date of his appointment and qualification to the date of his final discharge or removal, was continuously and "hopelessly insolvent."

But, aside from the liabilities originally created by Schoettger by his acts of omission and commission, as agent for Boschulte, it appears to be a rule well established by authority that, if an executor, trustee, or guardian places the title to property belonging to the trust in his own name, or in the name of some third party without any designation or indication of the capacity in which the title is held, or enters into any arrangement which limits or surrenders his control over it, such act renders the executor or trustee liable in the event of loss, notwithstanding that otherwise he may not have been guilty of negligence or bad faith. This is but a proper application of the principles of agency already discussed to the relationship of the executor to his trust. See *Estate of Wood,* 159 Cal. 466, 114 Pac. 992; *In re Arguello,* 97 Cal. 196, 31 Pac. 937; *In re Bane,* 120 Cal. 533, 52 Pac. 852; *Breit v. Yeaton,* 101 Ill. 242; *Allen v.*

*Leach,* 7 Del. Ch. 83, 29 Atl. 1050; *Knowlton v. Bradley,* 17 N. H. 458, 43 Am. Dec. 609; *Cornet v. Cornet,* 269 Mo. 298, 190 S. W. 333; *Duffie v. Williams,* 148 N. Car. 530, 62 S. E. 611; *Booth v. Wilkinson,* 78 Wis. 652, 47 N. W. 1128.

We thus conclude that the allowance of appellant's claim for credit in his final report of $5,000 represented by the Jungbluth note, and for $1,200 advanced by him as his share of the expenses of foreclosure, may not be allowed in whole or in part; and that in addition to these two items he is properly chargeable as executor with interest on the sum represented by the Jungbluth note and mortgage securing the same from the date thereof, viz., October 11, 1926, as provided by law.

We have carefully considered the other assignments of error in behalf of the cross-appellants. In consideration of the views of this court announced in *In re Estate of Wilson,* 97 Neb. 780, 151 N. W. 316, and the limitation of the record before us, we are of the opinion that the disposition of these matters as made by the trial court was correct. In view of the length of the present opinion, we arrive at the conclusion that an extended discussion of these matters would serve no good purpose.

Therefore, we are confirmed in our view that, under the undisputed facts in this case, aided by the necessary inferences which the surrounding circumstances established by the proof require, the judgment entered in the trial court must be modified by the addition of interest as herein determined. Judgment will accordingly be entered in this court in conformity with this finding, and, as thus modified, the judgment is

AFFIRMED AS MODIFIED.