Baird v. Lane.

APPEAL from the district court for Hitchcock county: CHARLES E. ELDRED, JUDGE. *Affirmed.*

*Corcoran & Sprague* and *Bernard McNeny,* for appellant.

*Butler & James* and *J. F. Ratcliff, contra.*

Heard before GOSS, C. J., ROSE, DEAN, DAY, GOOD, THOMPSON and EBERLY, JJ.

ROSE, J.

---

GEORGE W. BAIRD, EXECUTOR, APPELLANT, v. CHARLES G. LANE, APPELLEE.

FILED APRIL 12, 1927. No. 24736.

1. **Trusts: ACCOUNTING BY TRUSTEE.** In a court of equity the accountability of a trustee for the safe-keeping and investment of trust money is not measured by his own conceptions of duty, where they conflict with fundamental principles of justice essential to the protection of trust property and of the estate of deceased persons.

2. ———: ———. It is the duty of a trustee accepting money for the purpose of safe-keeping and investment to account for

the investments and income, to report his fiduciary transactions to the beneficiary, and to surrender the trust funds in his hands upon the termination of the trust relation.

3.  ———: ———: INTEREST. A trustee who, for safe-keeping and investment, accepts from a widow her entire means of support, she having no earning capacity, may be charged with the principal and interest at 7 per cent., where he lends trust money to himself at 6 per cent., exacts 8 or 10 per cent. from other borrowers, pays the beneficiary 6 per cent. only, makes non-producing investments in the stock of corporations officered in part by himself, and fails to keep an account of investments and income.

4.  ———: COMPENSATION OF TRUSTEE. A trustee who, through friendship, accepts money for safe-keeping and investment, without any agreement for compensation, is not necessarily entitled to pay for his services where he fails to perform his duties.

APPEAL from the district court for Adams county: WILLIAM A. DILWORTH, JUDGE. *Reversed, and decree entered for plaintiff.*

*W. C. Pettit* and *James & Danley,* for appellant.

*Dungan & Tibbets, contra.*

Heard before GOSS, C. J., ROSE, DEAN, DAY, GOOD, THOMPSON and EBERLY, JJ.

ROSE, J.

This is a suit in equity to require Charles G. Lane, defendant, to account as trustee for $8,000 received by him from Mercy A. Finley. The trust funds, according to defendant's receipts therefor, consisted of three items: April 20, 1900, $6,000; December 27, 1902, $1,000; May 2, 1904, $1,000. The correct date of the latter, however, was May 2, 1900. Each of the receipts contained this provision: "For safe-keeping and investment." Mercy A. Finley, beneficiary of the trust, died in Greenville, Mercer county, Pennsylvania, November 27, 1921, leaving a will, which was duly probated in that county. George W. Baird is the executor and as such is plaintiff in this suit. He filed his

petition in the district court for Adams county, Nebraska, December 26, 1923. The equitable relief sought by him is a judgment for the amount owing by defendant to the estate of Mercy A. Finley,. deceased. It is charged in the petition that defendant did not make proper investments of the trust funds, mingled them with his own, neglected to keep accounts of the income therefrom and paid interest to the beneficiary at times and in amounts unknown to plaintiff who acknowledged as executor the receipt of $500 in cash from defendant December 16, 1921. Plaintiff's entire claim consists of the three trust funds described and interest on each at the rate of 7 per cent. per annum, less the 500-dollar payment to the executor and interest, amounts and dates unknown, paid by defendant to the beneficiary.

In an answer to the petition in equity defendant admitted the receipt of the trust funds and his acceptance of the trust. He also interposed the plea that the money received by him from Mercy A. Finley constituted all her estate, was her only means of revenue for maintenance, was the only barrier between her and abject poverty, and that, owing to age and feebleness, she had no earning capacity. Defendant denied the charges of misfeasance and pleaded faithful performance of his duties. In substance the answer contained allegations that the trust funds were properly invested; that from the income defendant sent to the beneficiary from time to time as she needed money what was approximately interest on the trust funds at the rate of 6 per cent. per annum; that his payments of interest during the time he had charge of the trust. estate aggregated about $10,136.17, as shown by an itemized statement attached to his answer; that he paid on the principal $750, making a total of $10,886.17; that he tendered to the executor in discharge of his obligations as trustee the following securities in which the remainder of the trust funds had been invested: Note of Ed Tanner for $4,882.50; stock of the Citizen's Hotel Company, 10 shares, $1,000; stock of the Hastings Equity Grain Bin Manufacturing Com-

pany, 10 shares, $1,000; certificate of deposit, $367.50; total, $7,250, all, as alleged, "connected with the money received from Mercy A. Finley." The answer contained also a counterclaim for compensation of $3,000 for the trustee's services.

The reply of plaintiff to the answer of defendant was a general denial.

Upon a trial of the issues the district court found that the Tanner note for $4,882.50 was the property of defendant, but permitted him to discharge his liability for that amount of trust money by deducting therefrom for his services $3,000 upon receipting therefor and by depositing in court to the credit of the executor the difference between $4,882.50 and $3,000 or $1,882.50. In addition, defendant was permitted by the trial court to turn over to the executor, as the remainder of the trust property, the corporate stock mentioned, $2,000, and the certificate of deposit for $367.50, and to recover the costs of suit. Plaintiff appealed.

On the record below the appeal presents the cause for trial *de novo* without regard to the findings and judgment of the district court.

In equity, was defendant entitled to discharge his liability for income on investments by proof that he paid the beneficiary at different times as she needed money interest at the rate of 6 per cent. per annum for approximately 21 years, or $10,136.17? The answer depends on the nature of the trust and on what the trustee did. For a number of years prior to the creation of the trust relation defendant was a friend of the beneficiary's son and the friendship extended to the mother. Through the friendly advice of defendant, the son acquired the trust money, but soon died, and it fell into the hands of his mother. In addition to the ties of friendship defendant had the standing and influence of a banker. He was cashier or president of the Exchange National Bank of Hastings previous to, during, and after the period of his trusteeship. In perfect confidence Mercy A. Finley committed to him her only means of livelihood— $8,000. According to defendant's pleading and testimony

this was the only barrier between her and abject poverty, she being without earning capacity and needing every cent of her income. She did not exact promissory notes or securities or a fidelity bond or impose any restrictions on the discretion of defendant as a fiduciary, but for 21 years was contented with three receipts, alike in form, the first being as follows:

"April 20, 1900.

"Received of Mrs. M. A. Finley six thousand dollars for safe-keeping and investment.
"$6,000.                                C. G. Lane."

Defendant accepted the money with all the implied obligations imposed by implicit trust and confidence. His accountability in a court of equity is not measured by his own conceptions of duty, where they conflict with fundamental principles of justice essential to the protection of trust property and of the estates of deceased persons. It was the duty of defendant as trustee to keep an accurate account of all investments and of the income therefrom, to report promptly such transactions to the executor of the beneficiary's estate, and to turn over to him in money or proper securities all trust funds remaining in his hands. He has never performed this duty, nor given any reasonable excuse for failing to do so. A banker who is compelled by law and business rectitude to keep accurate accounts of debits and credits in transactions with depositors, regardless of the amounts involved or the book-entries required, ought to have at least some kind of memoranda showing investments of trust money and the income therefrom, when called to account as trustee, or else give a valid excuse for his failure to perform his duty in that respect. Without any authentic account to indicate specific investments or income for a period of 10 years or more, defendant appeared in court to answer the charge that he had failed to account as trustee. For that period he was unable to enumerate as a witness the different investments of trust money or to give the rate of interest on each loan, or the income realized, but was willing to rest his defense in

part on his own testimony and conclusion that the earnings of the trust funds did not exceed interest at the rate of 6 per cent. per annum, and that he had paid on that basis all he had received, or about $10,136.17. In proving what he had thus paid, he was not handicapped by oral testimony or the memory of individual transactions. He exhibited a complete list of the payments of interest to the beneficiary. It showed the date and amount of each payment and was accompanied by an authentic voucher. Had fidelity to trust and the promptings of friendship been as powerful as self-interest, the courts would have written data to aid them in estimating the amount owing by the trustee to the beneficiary's estate. The legal rate of interest in Nebraska is 7 per cent. In determining whether defendant is chargeable with 1 per cent., in addition to the 6 per cent. voluntarily paid by him, an examination of the evidence relating to investments is essential.

A partial account prior to July 13, 1912, shows that at different times defendant lent trust funds in varying amounts at 10 per cent. Some of the borrowers paid 8 per cent. As trustee he lent to himself as an individual August 11, 1900, $3,000 at 6 per cent. According to his own testimony he paid back the money May 1, 1902, but was unable to say what he did with it afterward. Subsequent to July 13, 1912, he did not keep a detailed account of his trust investments. In lending or investing trust money he conducted business in part at least in his own name. He testified in substance that the Tanner note tendered by him as evidence of a trust investment of $4,882.50 was secured by a deed in which he was himself grantee. The land described in the deed was incumbered by a prior mortgage for $5,000. Defendant himself claimed a lien of $2,000 or $3,000 on the same land. For several years no interest on the Tanner note has been paid, though the beneficiary, as pleaded by defendant, needed every cent of her income. The district court found that this note was the property of defendant, and from that finding he did not appeal. He testified he once invested trust funds in

Baird v. Lane.

stock of the bank officered in part by himself. The shares of stock tendered by defendant as trust property stood in his own name. He was an officer of both corporations. If he risked trust money in those enterprises the risk was speculative. No one could tell in advance that dividends would ever be paid. For a period of years they have produced no income available to the beneficiary, though income from the trust property was her only means of livelihood. If defendant paid from his own pocket interest on the money invested in the stock, as the beneficiary needed it, there is an inference that he lent $2,000 to himself and invested it in the stock for his own benefit. In any event the stock stood in his own name and he was in a position to claim it for himself, if profitable, and to unload it on the trust estate, if unprofitable. The investments of trust money in the stock, if made, did not indicate the prudence and care required of a trustee under the circumstances of this case. In a court of equity he cannot be permitted to escape accountability for the money entrusted to him by tendering in court property of that kind. The executor properly exercised the option to treat the Tanner note and the stock investments as conversions of trust property or as loans of trust funds by the trustee to himself as an individual.

The claim for compensation is wholly without merit. Defendant accepted the trust through friendship. There was no agreement for compensation. For 21 years defendant did not demand pay for services. He testified he never received any. In this situation the beneficiary left a will bequeathing to defendant $200. She made no provision for the payment of the $3,000, claimed by defendant for services. The terms on which defendant offered to account cannot be approved. He did not exhibit a proper account of his doings or turn over the trust funds in his hands. In these and other respects he failed to perform his duties and brought on litigation which will necessarily consume a considerable portion of the trust prop-

erty. These are circumstances under which a court of equity will not allow compensation.

In addition to 6 per cent. interest voluntarily paid by defendant, he is chargeable with interest at the rate of 1 per cent. per annum on $6,000 from April 20, 1900; on $1,000 from May 2, 1900; on $1,000 from December 27, 1902, each to March 14, 1925, the date of the judgment below. He is also chargeable with the three principal items. On the total amount of principal and interest due he is entitled to credit for $750. The counterclaim for compensation is disallowed and defendant is required to pay the costs in both courts.

The judgment of the district court is reversed. A decree conforming to these conclusions will be entered in the supreme court and the cause will be remanded for the purpose of carrying the decree into effect.

REVERSED, AND DECREE ENTERED FOR PLAINTIFF.