BEVERLY THOMAS ROTZIN, APPELLANT, v. A. R. MILLER ET AL., APPELLEES.

277 N. W. 811

FILED FEBRUARY 18, 1938. No. 29976.

*Lower & Sheehan,* for appellant.

*Reeder & Reeder* and *Walter, Flory & Schmid, contra.*

Heard before GOSS, C. J., ROSE, EBERLY, DAY, PAINE, CARTER and MESSMORE, JJ.

CARTER, J.

This is a suit commenced by the beneficiary under a testamentary trust to recover from the trustees the original trust fund of $5,000. The trial court found in favor of the defendant trustees and plaintiff appeals.

On January 31, 1928, one David Thomas died leaving a will which provided in part as follows: "I give, devise and bequeath to each of my surviving grandchildren the sum of Five Thousand ($5,000) Dollars, subject to the following conditions that all who may be minors shall have their said $5,000 held in trust by my executors together with accumulations thereto until they shall reach their majority." The plaintiff, Beverly Thomas Rotzin, was one of five minor grandchildren entitled to share in the estate under this provision of the will.

The will appointed William H. Thomas and Thomas D. Thomas, sons of the testator, and A. R. Miller executors, and contained also the following provision: "I hereby authorize and empower the trustees hereunder to do any and all things necessary in the furtherance of their duties in court or otherwise in protecting the interests in their hands and I hereby authorize and empower my executors hereinafter named to sell, bargain, grant and convey any or all property of my estate and convert the same into cash in order to meet the bequests and conditions of this will, without order of the court."

On March 1, 1929, the defendants, while acting as executors, had in their possession $65,000 in cash belonging to the estate of David Thomas, deceased. The evidence of

the trustees is to the effect that they concluded to purchase good first mortgages on real estate because of the uncertainty of the then existing banking situation. The trustees thereupon purchased a number of first farm mortgages from the Omaha National Company through the Miller Allied Securities Company, of which A. R. Miller, one of the trustees, was president. The only mortgage purchased that has any bearing in the present case was one for $4,000 on a quarter-section of Antelope county land owned by Mary Jensen. It appears that A. R. Miller inquired of the Antelope State Bank of Neligh regarding the value of the land before the mortgage was purchased and that Ray Swanson of that institution advised that it was worth from $65 to $75 an acre, or a total of $10,400 to $12,000. The record further shows that the land was appraised by two other residents of Neligh at $10,400, which appraisal was before the trustees before the mortgage was purchased. It also appears that the land at the time was assessed at $7,500 and that this fact was considered by the trustees before the purchase was consummated. In addition to these precautions, the trustees procured a written agreement with the Omaha National Company by which the Omaha National Company agreed to repurchase the mortgage within six months at the full purchase price if, for any reason, the trustees desired to turn it back.

On July 5, 1929, the final decree of the probate court of Platte county was entered, based upon the final report of the executors showing that they held the trust fund in question as cash when in fact the $4,000 Jensen mortgage had been purchased with a part of the fund. Thereafter the executors continued to handle the funds as trustees and at all times showed the Jensen mortgage or Jensen land, and the income therefrom, as the property of the Beverly Thomas Rotzin trust fund. The record discloses that A. R. Miller kept an account of every transaction made on behalf of this trust estate, such account appearing in the record. In addition thereto, reports were filed with

the county judge by the trustees on January 15, 1931, March 15, 1932, March 1, 1933, March 1, 1934, and March 1, 1935, and in each the Jensen mortgage or the land secured by it appeared as the property of this trust. We necessarily conclude from this statement of the facts that the trustees used due care in the purchase of this mortgage, that the Jensen mortgage was at all times a part of the Beverly Thomas Rotzin trust account and that the trustees kept records and filed reports which correctly show the whole transaction.

Complaint is made that the executors had no right to purchase the mortgage while they were acting as executors and before they were formally appointed trustees and that they falsified in reporting the Jensen mortgage as cash. This contention might have merit if it had resulted or contributed to the loss which eventually occurred. The Jensen mortgage was purchased in March, 1929, and the executors had the option of returning it to the seller and receiving back their cash payment at any time during the following six months. Within the six months they had been formally appointed and had duly qualified as trustees. It would have been a simple matter to put the actual cash in the estate at the time it was settled had the occasion demanded, and subsequently to have repurchased this mortgage. We fail to see that these trustees acted dishonestly in this transaction, especially when they knew that they were shortly to be appointed trustees. Any irregularity in reporting cash in their final report as executors of the estate, when as a matter of fact they held this mortgage, bears no relation whatever to the loss sustained by the depreciation of the value of the property.

The evidence shows, however, that some time after the purchase of the Jensen mortgage the owners of the land secured thereby were unable to pay the interest thereon. Subsequently it became necessary to take over the land. This was done by having the owners deed the land to the Miller Allied Securities Company under date of September 14, 1932, the deed being recorded on November 9, 1932.

On November 26, 1932, the Miller Allied Securities Company deeded the land to the defendants as trustees, who placed the deed in the file of the Beverly Thomas Rotzin trust estate without recording it. Plaintiff contends that this method of handling the property was a violation of the trust that would make the trustees liable to the plaintiff for the original $5,000 cash trust fund when she reached her majority on August 12, 1933.

It is claimed by plaintiff that the land is now worth less than the amount of $4,000 and she refuses to accept it as the equivalent of $4,000 in her accounting with the trustees.

This court has held that when a trustee actually deals with his trust in the name of another, or by means of an agency which he himself controls, he will be deemed to have transacted the business in his individual name and as an individual. *In re Estate of Boschulte*, 130 Neb. 284, 264 N. W. 881. We necessarily conclude that the trustees, when they took the title to the land in the name of the Miller Allied Securities Company, an institution controlled by A. R. Miller, one of the trustees, fell within the rule of law applicable when a trustee takes the trust property in his own name. It is a fundamental rule of law that a trustee who takes trust property in his own name violates his duty as a trustee. Where, however, it appears affirmatively from the record that the breach of duty in no way contributed to the loss suffered by the trust estate, and the trustee acted in good faith, no liability attaches to the trustee.

An authoritative text states the rule as follows: "If the trustee takes title to the trust property in his individual name in good faith, and no loss results from his so doing, he is not liable for breach of trust. Thus, if the trustee of a mortgage accepts a conveyance of the property from the mortgagor, and in order to prevent a merger takes the conveyance in his individual name, acting in good faith and crediting the trust estate in his accounts with all receipts from the property, and the only objection to the transaction is that he took title in his own name, he is not liable

merely because the property depreciates in value. The breach of trust in such a case is merely a technical breach of trust, and no loss has resulted therefrom. If, however, he took title in his own name in bad faith, intending to misappropriate the property, he is liable for the full amount of the mortgage and interest thereon. Even if he acted in good faith, if a loss resulted from the fact that he took title in his own name, as for example if his personal creditors were thereby enabled to reach the property free of trust, he would be liable for the loss." Restatement, Trusts, sec. 179, comment *d*. See, also, *Freas' Estate*, 231 Pa. St. 256, 79 Atl. 513.

In our opinion, the record before us clearly demonstrates that the loss to the trust estate, if any, was the result of a depreciation in land values subsequent to the date of the purchase of the mortgage and was in no way caused by a breach of duty on the part of these trustees. The breaches of duty urged before this court, under the evidence contained in the record, are technical and in no way contributed to the loss. The trustees kept records and made reports which clearly show that there was no intermingling of the trust property with the private property of the trustees. The undisputed documentary evidence precludes the conclusion that the trustees could have substituted a poor investment for a good one to the injury of this plaintiff. At the time the trustees purchased the mortgage, it appeared to be a sound investment. It is only in the light of subsequent events which resulted in a great depreciation of real estate values generally that it could be charged that the trustees were in any manner guilty of bad judgment. They are not liable for failing to foretell this eventuality. The records, accounts, reports and other documentary evidence establish the fact that there was no breach of duty committed by the trustees for which liability attaches.

We have come to the conclusion that we erred in our former opinion, *Rotzin v. Miller*, 133 Neb. 4, 274 N. W. 190, and it is therefore vacated and set aside. For the reasons

herein contained, and after a consideration of all the evidence, we conclude that the judgment of the trial court was in all respects correct and it is

AFFIRMED.

ROSE, EBERLY and DAY, JJ., dissenting.

Being firmly convinced from the standpoints of law, equity, fact and justice that the opinion of the majority upon a trial *de novo* is wrong in every material respect, we are impelled to make a solemn protest against the decision.

The controversy is between plaintiff, who was a female minor, and three men of affairs, defendants, who acted for her during her minority and wrongfully since as trustees in handling for her $5,000 which they received for her from her grandfather under his duly probated will.

The record shows conclusively by uncontradicted evidence that defendants violated their duties as trustees in the following particulars: They practiced deceit and fraud in reporting their fiduciary transactions to the county court of Platte county; were guilty of negligence in investing trust funds in their individuals names in a mortgage on land in Antelope county and in the land itself, where they could not take proper care of that property without unnecessary expenses and losses; committed a breach of trust in the same transactions; held in their own names personally and managed trust property for more than three years after the trust had expired by its own terms; violated the rules of law and equity by acting for themselves and the beneficiary in the same transactions; refused to turn over to the beneficiary her trust property upon termination of the trust; acted in a dual capacity and thus created the temptation to violate their trust for their own benefit.

Defendants were executors under the will and accepted the trust created by it for the benefit of plaintiff. The sum of $5,000 was bequeathed to her on the condition that it should be held in trust by defendants, with accumulations, until she should reach her majority. The will itself authorized the trustees to convert testator's estate into cash

"in order to meet the bequests and conditions of this will." October 25, 1929, the three trustees receipted in writing to themselves as executors for $5,000 to be held in trust for plaintiff under the will. The answer of defendants to the petition for an accounting admitted that plaintiff and Walter Rotzin were married August 12, 1933, and that she then reached her majority. It is alleged in the answer of the trustees that on July 19, 1929, out of this 5,000-dollar trust fund, they allocated to the trust created by the will in favor of plaintiff the following:

"Note of Mary Jensen *et al.* secured by a first mortgage on the southeast quarter of section 7, township 26, range 6 west, in Antelope county, Nebraska, maturing March 1, 1934, bearing interest at 5½ per cent., principal sum, $4,000; accrued interest, $73.33."

Defendants were not plaintiff's trustees July 19, 1929, and did not then have power to act in that capacity or to allocate any mortgage or real estate to the trust created by the will in favor of plaintiff. Neither the mortgage on the land described nor the title thereto was ever in plaintiff or in the trustees for her or in the estate of testator. Testator never owned the mortgage. It was never assigned to his estate or to plaintiff or to the trustees for her. Trustee Miller testified that the 4,000-dollar item was carried as a cash item, his own words being: "We called that mortgage a part of the cash assets of the estate." That testimony was followed by the question, "But you didn't list it where any one could find it from an examination of that account?" He answered: "Not so far as other papers were concerned." He was then asked: "You didn't make any showing in the county court at the time that you signed receipt as trustee for Beverly Thomas to the effect that you had a mortgage from Mrs. Jensen did you?" To this he replied: "No, sir." Further questioning continued: "As a matter of fact you receipted for this $5,000 to Beverly Thomas as a cash item?" Answer: "Well, didn't say what it was—just $5,000." The trustees often reported this note and mortgage to the county court as an asset

of plaintiff's trust. It was never legally that, but in law and by record and possession was individual property of the persons who had been named as trustees. This conduct was a patent fraud upon the court and upon plaintiff. It proved a violation of trust and confidence reposed by testator in Miller as a "friend" and in the other trustees who were bound to testator and to plaintiff by the ties of blood.

Negligence in investing $4,000, of plaintiff's estate as defendants contend, before they became her trustees and consequent loss are facts shown by the evidence. Expensive trips from Columbus, Platte county, to protect the mortgage, to collect the rents and to look after the mortgaged land in Antelope county could not have been overlooked in the required exercise of diligence without negligence. Such trips were necessarily contemplated as factors in the transactions. Defendants proved this negligence by charging plaintiff and her trust property with such trips and expenses of a trustee as are indicated by the following items in their account: October 29, 1932, $7.50; January 11, 1933, $14.35; January 18, 1933, $5; April 11, 1933, $12; December 19, 1933, $13; January 23, 1934, $15.09; May 12, 1934, $5; May 17, 1934, $12.50; November 5, 1934, $3.50. Additional charges were made for services of a trustee. Besides, the trustees pleaded in their answer that the mortgage matured March 1, 1934, which was after the trust relation expired by its own terms. They had no duties to perform as trustees after August 12, 1933, the date when plaintiff reached her majority, except to account to her for their fiduciary transactions and turn her trust property over to her, duties and bonded obligations still unperformed.

The failure to execute the trust according to its terms is shown by the evidence beyond a reasonable doubt. It was a condition of the will as well as of the trust itself that plaintiff's bequest of $5,000 with accumulations should be held in trust for her until she should reach her majority —a date admitted by defendants to be August 12, 1933.

They did not then nor at any subsequent time turn over to her the $4,000 with which they bought the mortgage on the Jensen land in Antelope county nor the title thereto. Instead, they took the title to that land in their own individual names. They resorted to plaintiff's trust funds to pay large sums for taxes and repairs on the same land, still held by title and possession in their own names, and are now, more than three years after expiration of the trust relation, and after the land has depreciated in value, offering, as they prayed in a court of equity, to convey the title from themselves to plaintiff, encumbered by a judgment against her for their services as trustees, for alleged overpayments to her, for costs' and for services of their attorneys in procuring this and other relief for themselves. A universal rule of equity applicable to the undisputed evidence adduced by defendants has been correctly stated as follows:

" 'Unless otherwise agreed, an agent receiving or holding things on behalf of his principal is subject to a duty to the principal not to receive or deal with them so they will appear to be his own.' * * * Restatement, Agency, 900, sec. 398." *In re Estate of Boschulte,* 130 Neb. 284, 264 N. W. 881. Approved in *Rotzin v. Miller,* 133 Neb. 4, 274 N. W. 190.

Another principle, everywhere recognized as essential to public policy and to accountability of trustees in their relations of trust and confidence, follows:

"It is the duty of a trustee accepting money for the purpose of safe-keeping and investment to account for the investments and income, to report his fiduciary transactions to the beneficiary, and to surrender the trust funds in his hands upon the termination of the trust relation." *Baird v. Lane,* 115 Neb. 413, 213 N. W. 512. Followed by a unanimous court in *In re Estate of Boschulte,* 130 Neb. 284, 264 N. W. 881, and in *Rotzin v. Miller,* 133 Neb. 4, 274 N. W. 190.

Defendants as trustees lent to one of their number $100 belonging to plaintiff's trust estate. They also acquired title

to land in their own names as individuals. They thus attempted in the same transactions to serve two masters—themselves and plaintiff. The record shows they proved those facts and resulting loss in the land deals. The pertinent doctrine based on precedent, public policy, equity and justice has not been disturbed in former opinions. The following views were expressed by a unanimous court:

"It is firmly established, both by English and American courts, that a trustee is bound to perform faithfully the duties relating to his trust, and that in doing so he cannot allow his own interests to interfere. If he unites his personal and representative capacities, he confuses transactions which the law requires him to keep separate and distinct. If he attempts to acquire an individual interest in the subject-matter of his trust or agency, he creates a temptation to serve himself at the expense of the beneficiary or principal, and enters a realm where his secret purposes with reference to trust property or interests may escape judicial scrutiny." *Nebraska Power Co. v. Koenig,* 93 Neb. 68, 139 N. W. 839.

On the facts established herein without dispute, the law of accountability of the trustees to the beneficiary of the trust or *cestui que trust* was in Nebraska and now is elsewhere, as follows:

"Where a trustee takes title to trust property in his own name as an individual, the *cestui que trust* has the option to accept the investment or require the trustee to account for the purchase money with interest." *Freas' Estate,* 231 Pa. St. 256, 79 Atl. 513; 3 Bogert, Trusts and Trustees, sec. 596.

The nature of the transactions relating to the 4,000-dollar item, to the assignment of the Jensen mortgage and to the mortgaged land is not left in doubt by the record. The negotiations for the purchase of the mortgage were conducted by A. R. Miller, president of the Miller Allied Securities Company, a corporation for which he acted. He controlled it. This mortgage was purchased with $4,000 belonging to the estate of testator, David Thomas.

This is shown by a 4,000-dollar check and by testimony of Miller. The check was dated March 1, 1929, and was payable to Miller Allied Securities Company on account of Jensen first mortgage loan. It was signed "David Thomas Estate by A. R. Miller, Executor." It was indorsed on the back "Pay First National Bank, Columbus, Nebr., or order Miller Allied Securities Co. A. R. Miller, Pres. Leonard S. Miller, Secy-Treas." and marked paid by indorsee. Miller testified that the assignment was never recorded and that the purchase was on behalf of the estate of testator. It was the money of testator's estate, therefore, that was paid for the mortgage and not the trust money of plaintiff. The record shows that the mortgage was never assigned to plaintiff or to defendants as her trustees, that plaintiff was without knowledge of the assignment and that the Miller corporation was the assignee.

When the Jensen mortgagors were in default, they deeded the mortgaged land to the "Miller Allied Securities Company, Trustee," September 14, 1932, without disclosing any beneficiary or *cestui que trust.* The conveyance was made subject to a mortgage of $4,000, past-due interest and past-due taxes. This deed is in the bill of exceptions. The fact that it was finally recorded is immaterial in the determination of the case, because there was never any record evidence of title in plaintiff or in defendants as her trustees.

Another deed, dated November 26, 1932, purporting to convey this same land to Thomas D. Thomas, William H. Thomas and A. R. Miller, trustees, without indicating any beneficiary or *cestui que trust,* was signed "Miller Allied Securities Company, Columbus, Nebraska, Trustee, by A. R. Miller, President."

The word "trustee" following the name of grantee or grantor in a deed is merely *descriptio personæ,* and does not disclose a trust or beneficiary. Following is the rule of law and equity: "The mere insertion of 'trustee' after the name of grantee in a patent for land does not prevent the title from passing to the person named nor prevent

him from transferring it to another, where a trust or a beneficiary is not disclosed." *Perry v. Ritze,* 110 Neb. 286, 193 N. W. 758. See, also, *Farrell v. Reed,* 46 Neb. 258, 64 N. W. 959; *Thomas v. Carson,* 46 Neb. 765, 65 N. W. 899; *Andres v. Kridler,* 47 Neb. 585, 66 N. W. 649.

The same rule was recently stated in this form: "The insertion of the word 'trustee' after the name of the grantee in a real estate mortgage does not of itself establish the existence of such a trust relationship." *Parker v. Bourke,* 131 Neb. 617, 269 N. W. 102.

This Jensen land, therefore, is not trust property belonging to plaintiff. The title to it was never in her or in defendants as trustees for her. In law it is the property of the grantees named as individuals. They managed it more than three years after they were required in equity to turn her trust property over to her. In the meantime they used her trust money to pay large sums for taxes and expenses for repairs on their own premises. They have never yet tendered to her an executed deed to this land upon condition of her refunding overpayments, interest, costs and fees of attorneys.

The uncontradicted evidence, therefore, shows that defendants in their relations of trust and confidence pursued two different courses of iniquity. One course led through public records to the deed to themselves personally where their title permitted them to sell the land at a profit for their own benefit in the event of a boom in the value of farm lands. The other course led to their private files and accounts where they kept what falsely appears to be proofs that the land was part of plaintiff's trust property, so that it could be unloaded on her in the event of a loss. They were not induced to keep the land, because its value dropped and the only way to prevent a loss to themselves was to deed it to plaintiff encumbered by liens which they created in addition to her trust money which they used to pay taxes and expenses of repairs on the same land. Reservations in their deed show that the land was not sufficient security for $4,000 and that the investment will

result in a loss. There is testimony of defendant Miller to the same effect.

The depression covers a multitude of sins, but it is no justification for deceit and fraud, for negligence resulting in the loss of trust property, for breach of trust, for holding trust property in the name of the trustees, for violating the rules of law and equity that fix the accountability of trustees, for failure to perform their duties, for refusal to surrender trust property when the trust relation expires by its own terms and for creating the temptation to serve personal interests at the expense of a beneficiary.

The philosophy on which the rules of equity herein quoted are based came down from the Chancellor of Galilee who dictated the hallowed petition, "No man can serve two masters," and taught the sacred prayer, "Lead us not into temptation," a prayer heard at the firesides and in the churches of Christendom.

Courts of equity do not administer Divine law, but generally they have been scrupulous in observing rules of equity founded on the highest concepts of morality, honesty, justice, rectitude and righteousness. Measured by these standards, the judgment affirmed by the majority, when considered with the undisputed facts, is an anomaly without a former parallel in adjudicated cases. The trial court and the majority on appeal approved all the acts of defendants and required plaintiff to account to them for those acts. The district court entered a personal judgment in favor of defendants against plaintiff for the following items: Additional compensation, $24.50. included in overdraft, $146.55; further services for executing the trust, $50; attorney fees for defending this. suit, $200; total, $396.55. This judgment by decree in equity was transported from the courthouse in Platte county across the county line to Antelope county as a lien on the land to which defendants hold the title in their own names. They are not required to convey it to her unless she pays the judgment. If she is unable to make the payment within 90 days, they are ordered to sell the land, pay to themselves the judgment

out of the sale price and turn any remaining proceeds of the sale over to her. This is the judgment affirmed by the majority. It defies the law of this and other states that plaintiff has the option to demand her $4,000 and interest or accept the title now in her trustees.

The reason given by the majority for their decision is stated in the syllabus as follows:

"When it affirmatively appears that a trustee took title to the trust property in his individual name in good faith, and no loss resulted from his so doing, he is not liable for breach of trust. Restatement, Trusts, sec. 179, comment *d.*"

The text-writer who gave utterance to that doctrine was not exercising the power of a court of equity to pronounce a judgment. It is contrary to the proper rule stated in another part of the same text and violates former rules unanimously adopted by this court. Besides, the facts assumed in the doctrine quoted are at variance with uncontradicted evidence in the record. The text violated reads:

"If the agent violates his duty to keep the funds of the principal distinct from his own and in the principal's name and if, while so improperly mingled (invested) or deposited in the agent's name, the fund suffers loss, whether or not the loss is due to the agent's wrongful act, he is subject to liability to the principal for the amount of the original fund with interest from the time of the breach of duty." Restatement, Agency, sec. 398, comment *d.*

This latter statement of the correct rule in equity was quoted and adopted by a unanimous court in *In re Estate of Boschulte,* 130 Neb. 284, 264 N. W. 881. Another rule of equity violated by the affirmance of the judgment below is here reproduced:

"The violation by a trustee of a duty laid upon it by law, whether wilful and fraudulent, or done through negligence or arising through mere oversight or forgetfulness, is a breach of trust." *Masonic Bldg. Corporation v. Carlsen,* 128 Neb. 108, 258 N. W. 44. Followed in *Rotzin v. Miller,* 133 Neb. 4, 274 N. W. 190.

An examination of the cases in which courts have held that a trustee may take and hold in his own name land purchased with trust money shows that the trustee either so acted by contract or in the interest of the beneficiary to protect the trust property. The opinions in such cases have no application whatever to the case at bar.

In Nebraska the rules of equity that hold trustees accountable for investing trust funds in mortgages or lands in their own individual names bind trustees as firmly as statutes of like import. In a recent case the consequences of violating such a statutory rule were considered in an opinion by the supreme court of Pennsylvania in which it was said:

"Appellant contends that the company acted improperly in continuing to carry the mortgage in its own name after allotting it to the estate, and that the mere execution of a declaration of trust on the books of its trust department was an insufficient compliance with section 29 of the Act of April 29, 1874, P. L. 73, as amended by the Act of May 9, 1889, P. L. 159, and by the Act of April 6, 1925, P. L. 152. With this we are entirely in accord. That act as amended requires that trust companies 'shall keep all trust funds and investments separate and apart from the assets of the companies, and all investments made by the said companies as fiduciaries shall be so designated as that the trust to which such investment shall belong shall be clearly known.' We are unable to agree with the opinion of the court below that the company's declaration of trust on its books was a sufficient compliance with the act. Where the trust to which the investment belongs is designated in no other way than by a declaration on the company's books, the allotment is 'clearly known' to no one except the company. While the act as amended in 1925 provides that a clear designation on the company's records shall be sufficient compliance in the case of a mortgage pool, the mortgage here had been taken out of the pool and put into the Yost trust. The company was therefore under the same duty in regard to it as in the case of any other

specific piece of property acquired for a specific trust. Whether it acquired the property from another or from itself, as in this case (a practice of which we do not approve but of which no complaint is here made), it should have taken title as trustee for the specific trust, by an instrument designating it as such and placed upon public record, so that all persons interested might be put upon notice of the trust: *Freas' Estate*, 231 Pa. St. 256; *Carr's Estate* (No. 1), 24 Pa. Superior Ct. 369; see Restatement, Trusts (Tentative Draft No. 2) section 174, comment *d*. Only when such precautions have been taken is the beneficiary properly protected from the danger of an unfaithful trustee's subsequently claiming the property as his own and from the possibility of attacks by the trustee's creditors. A failure of the company to realize that a mortgage allotted to a specific trust could not be treated like a mortgage in a pool, but imposed different duties upon it, would not, of course, serve to excuse it from the neglect of such duties.

"It is well settled that where a trustee invests trust money in property which he takes in his own name as an individual the beneficiary has the option to accept the investment or require the trustee to account for the money so invested, with interest: *Morris v. Wallace*, 3 Pa. St. 319; *Stanley's Appeal*, 8 Pa. St. 431; *Royer's Appeal*, 11 Pa. St. 36; *Freas' Estate, supra; Carr's Estate, supra;* see *McAllister v. Com.*, 30 Pa. St. 536; *Norris' Appeal*, 71 Pa. St. 106. We see no reason for changing so settled and salutary a rule. As was said in *Matter of Union Trust Co.*, 219 N. Y. 514, 'It has been quite universally held that a trustee should not invest trust funds in his own name. Such rule of law should not be abandoned, qualified, or in any way impaired. * * * There is no difference between a corporate trustee and an individual trustee in its or his duty in respect to investments. Trust funds should not only be kept independent of individual and other trust funds, but the investments thereof should, so far as possible, be clearly defined, and at all times stamped with the individual trust

to which they severally belong.' The trustee should not be permitted so to make an investment that he can call it his own today, if good, and tomorrow, if bad, ascribe it to the trust, or shift it from one trust to another, or leave it subject to attack by creditors as his individual property. Only by giving the beneficiary a right to make the trustee account for funds thus invested can a practice so fraught with danger be effectually prevented. Nor is the danger less where the trustee is a corporation than where the trustee is an individual.", *Yost's Estate,* 316 Pa. St. 463, 175 Atl. 383.

The judgment pronounced by the majority is wrong in its entirety, and their opinion, if recognized as stating a general rule of law and equity, will jeopardize trust funds of inestimable value, scattered, as they are, over the world in different forms where they are not under the watchful eye of the owners.

In dissenting we are giving our views at length, owing to the vast importance of the decision which we regard as a disturbing factor in the former public policy of the state and as an invasion of the equitable rights of an innocent beneficiary.