ETTA M. MILLER & *a. v.* GEORGE E. PENDER & *a.*

*Theodore P. Hollis* (of Massachusetts), *Hughes & Burns* and *Walter A. Calderwood* (*Mr. Calderwood* orally), for the plaintiffs.

*William H. Sleeper* (by brief and orally), for the defendant George E. Pender.

JOHNSTON, J.  The defendant trustee, whom we shall call simply the defendant, under the instrument setting up the trust fund had

the power "To invest the same in such securities as said trustee shall deem proper (even though the same shall not be classified as trust investments under the laws of New Hampshire), . . ." The Court found and ruled as follows: "The trustee had a broad discretion under the provisions of the trust agreement in making and changing investments and he acted within his authority as trustee. In these matters he exercised his best judgment and the care and skill which a man of ordinary prudence would exercise in dealing with his own property." To this the plaintiffs excepted. The test applied is too liberal. In making investments for a trust, the proper standard to follow is the care and skill of a prudent man in conserving the property—not that of a man of ordinary prudence. "It is true that in certain transactions, as in the making of investments, it is not sufficient that the trustee should use the care and skill of a prudent man in investing his own property. There is an additional requirement that he should use the caution exercised by a prudent man in conserving the property. In making investments the trustee is under a duty not only to exercise such care and skill as a man of ordinary prudence would exercise in dealing with his own property, but he must use the caution of one who has primarily in view the preservation of the estate entrusted to him, a caution which may be greater than that of a prudent man who is dealing with his own property." 2 Scott, Trusts, *s.* 174. See also, R. L., *c.* 363, *s.* 17, *par.* IV. *In re Estate of Cook*, 20 Del. Ch. 123, is cited in support of this principle. The Court there said that in making investments the trustee must not only use such care and skill as a man of ordinary prudence would exercise in dealing with his own property but that he must consider two additional points. First, the trustee is in duty bound to care for the rights of other people for whom he is morally bound to provide; and secondly, the primary object of the trustee is safety. "In measuring the duty of the trustee with the usual conduct of the man of average prudence in the care of his own estate, reference is to be had to the conduct of such a man in making permanent investments of his savings outside of business risks, rather than to his conduct in taking business chances." *Mattocks* v. *Moulton*, 84 Me. 545, 552. In *Kimball* v. *Reding*, 31 N. H. 352, the Court considered the propriety of an investment in a railroad stock under certain circumstances and declared, "Safety is the primary object to be secured in an investment of this kind, and the trustee is not chargeable with an income that cannot be realized without hazard to the fund." *p.* 374.

4

It is true that the powers of a trustee in making investments can be determined by the terms of the trust instrument. However, provisions enlarging the powers to invest are strictly construed. "More frequently the terms of the trust instead of restricting the trustee enlarge his powers in making investments. It is in each case a question of interpretation whether or not the terms of the trust enlarge the scope of permissible investments and if so to what extent. This depends upon how broad the scope of proper trust investments is in the particular state in the absence of a provision in the trust instrument and upon the breadth of the language used in the instrument. Where by statute or by judicial decision the scope of trust investments is narrow, an authorization to the trustee to make investments 'in his discretion' is ordinarily interpreted to enlarge his powers so that he can properly make such investments as a prudent man would make. In states in which in the absence of a provision of the trust instrument the trustee can properly make such investments as a prudent man would make, a provision authorizing him to make investments 'in his discretion' ordinarily does not extend his powers. A provision in the terms of the trust authorizing the trustee to exercise his discretion in making investments is not interpreted as permitting him to make investments which a prudent man would not make." 2 Scott, Trusts, s. 227.14. In the same section this authority considers the expression "in his discretion think proper." "Where the trustee is by the terms of the trust authorized to invest in such 'securities' as he may in his discretion think proper, the question arises whether the settlor intends to confine him to investment in secured obligations. The term 'securities' may conceivably be interpreted narrowly to mean secured obligations. On the other hand, the term is commonly used in a broader sense to include unsecured obligations such as debentures and shares of stock. It is usually held that the testator intended to use the term in the broad sense, the popular sense, rather than in the narrow sense which the etymology of the term might indicate. Even though the trustee is authorized to invest in common stocks or debentures, he must act with prudence in making the investment."

Clearly the defendant had authority to invest in securities that were not legal under our statutes, but in view of the fact that the trial Court adopted the standard of the care and skill of a man of ordinary prudence in dealing with his own property rather than that of a prudent man whose duty it is to conserve the property, this exception is sustained and there should be a new trial, since it is being held

that the trustee is not liable for the sum of $7,666.44 as decreed by the trial Court. If it should be found that the defendant was guilty of a breach of trust in investing according to this stricter standard, then the plaintiffs are entitled to recover for the losses suffered thereby. The damages for this breach of the trust duty would be the losses from securities that the trustee was not authorized to invest in to the extent that said losses were due to the lack of prudence as stated above and not due to general economic conditions without such lack of prudence in conserving the trust estate.

The Court found that the defendant acted honestly and in good faith in his trust dealing with his brother. To this the plaintiffs took an exception and also to the finding that there was no intent to convert the trust securities to the trustee's own use. These findings of fact were amply supported by the evidence. The Court heard the trustee testify. It had opportunity to note his appearance and the manner of his answering. For every investment made on behalf of the trust, the defendant invested at least an equal amount of his own money in the same stock.

The plaintiffs intimated at the trial that a certain suit in Massachusetts had been settled for the sum of $4,500 and that the proceeds of this belonged to the trust fund. This was a question of fact and the Court found that the plaintiffs had failed to prove a settlement or the receipt of any money.

The refusal to allow counsel fees was at least within the discretion of the Court.

The plaintiffs excepted to interest being limited to $3\frac{1}{2}\%$ and to the period after the death of the brother, December 13, 1940. In view of the finding that John L. Pender consented to the investments and agreed to risk a speculative type and the further finding that although he did not know that the securities were in the name of George E. Pender individually, he was otherwise satisfied with the manner in which the trust was managed, which findings were supported by the evidence, the refusal to award interest during the life of the brother was justified. In *Knowlton* v. *Bradley*, 17 N. H. 458, the Court charged the trustee with interest at the rate of $5\%$ per annum. This case was decided at the December term, 1845. The legal rate of interest then was $6\%$. R. S., *c*. 190 *s*. 2. Because of the present lower rates of interest, the amount of $3\frac{1}{2}\%$ allowed by the Court is equitable.

The securities invested in by the trustee were taken in his own name without any marks on them to show that they belonged to the

trust estate. The plaintiffs excepted to the finding that the trustee did this in good faith and that his purpose was to make the securities more readily exchangeable. As stated above, the finding of good faith was properly made by the Court. Whether the reason for the trustee's action was as stated by the Court or was simply neglect, the important point to decide is to what extent, if any, the trustee should be held liable.

Further facts found are as follows: that the trustee kept the original trust certificates apart from his own in a safe in his house; that he made notations of income and remittances on separate slips of paper from which with duplicate deposit slips it was possible for the accountant to trace the income and remittances of the trust fund; that the accountant was able to trace and learn the condition of the trust affairs and the administration of the trust.

It is the duty of a trustee to earmark assets of the trust as trust property. Certificates of stock should be issued in the name of the trustee as trustee. Restatement, Trusts, s. 179, comment d; Knowlton v. Bradley, supra. See also Heaton v. Bartlett, 87 N. H. 357, 361–364.

Failure to do this, however, is not so contrary to public policy that it cannot be authorized by the trust instrument. Rockwell v. Dow, 85 N. H. 58, 71.

A trustee guilty of a breach of trust in failing to have the securities properly tagged is liable for any loss occasioned by such breach. So if personal creditors of the trustee attach the trust securities written in the name of the trustee personally and cause loss to the estate, the trustee is liable in damages.

In the present case, however, it has been found that the depreciation amounting to $7,666.44 was not due to the breach of trust in taking the securities in the name of George E. Pender individually, but was caused by general economic conditions. The securities would have had the same value and would have sustained the same losses if they had been properly earmarked.

According to Professor Scott the authorities have held that a trustee is liable for any loss that is only simultaneous with a breach of the duty to earmark and not at all caused by it. "By the weight of authority it is held that the trustee is liable for any loss resulting from a fall in value of the shares, even though the loss did not result from the fact that the shares were taken in the name of the trustee individually. The courts seem to have felt that the practice is so dangerous that the trustee should be held liable for any loss which

results from the purchase of the shares, even though he acted in good faith in making the purchase and in taking the title to the shares in his own name." 2 Scott, Trusts, s. 205.1. See also s. 179.3 of the same work, and cases cited.

The purpose of the rule has been stated to be the prevention of any false claim on the part of the trustee or his estate as to the ownership of the securities of the trust or of the trustee. 3 Bogert, Trusts and Trustees, s. 596. This reasoning of course applies only to the prevention of losses that cannot be known. Losses that are known can be dealt with according to the ordinary principles of causation. Losses due to commingling of trust property, whether intentional or not, or due to conversion can be properly compensated for by the usual rules of causation and damages. The reasoning involved in the above stated purpose of the rule would seem to have little application where it is found that a trustee has been acting in good faith in the trust management. There should be little likelihood of such a trustee making false claims as to the title of property between himself and the trust estate.

A similar rule with regard to earmarking deposits has been said to be a harsh one. 2 Scott, Trusts, s. 205.1.

The rule requires the loss to be borne by the trustee as a penalty for the technical breach of the trust duty to earmark, since the loss is not caused by the breach but merely takes place during the time of the breach.

There is a tendency in the more recent cases involving investments in mortgages to adopt a more liberal view and to hold the trustee liable only for such loss as results from the failure to earmark and not for losses due to general economic conditions. 2 Scott, Trusts, s. 179.3; 3 Bogert, Trusts and Trustees, s. 596, Cumulative Pocket Part. Among these cases are: *Rotzin* v. *Miller*, 134 Neb. 8; *Guthrie's Estate*, 320 Pa. 530; *Springfield &c. Trust Co.* v. *Society*, 293 Mass. 480; *First Nat. Bank* v. *Basham*, 238 Ala. 500; *Chapter &c. King's Daughters* v. *Trust Co.*, 121 Conn. 558.

The case of *Knowlton* v. *Bradley, supra*, states the strict rule as follows: "If he [guardian in this case] take a note payable to himself individually, without a designation of his official character, he cannot be admitted to show, on the failure of the debtor, that it was taken for the funds of his ward." *p.* 460. This statement may be *dictum* only. For the Court also says: "If a guardian lends the funds of his ward to a merchant in business, without a surety, and suffers them to remain for any length of time, that is such negligence as will

make him answerable for losses occurring from such loan." *p.* 460.
The note in question was taken in 1834 and held four years until 1838
when the maker failed in business. The time of four years would
seem to come reasonably within the language "for any length of
time." If so, then the statement concerning omitting the designa-
tion of the official character is *dictum*. But it is not particularly im-
portant to decide whether the decision or a *dictum* of *Knowlton* v.
*Bradley* is being overruled. The important thing is to determine
what principles of equity should be applied between the plaintiffs
and the defendant. *Hollis* v. *Tilton*, 90 N. H. 119, 124. Should the
defendant trustee be held liable for depreciation of securities when it
was due to general economic conditions and he acted in good faith
and it is possible to trace the trust assets and account for all of the
trust property, because of neglect to properly earmark the securities
which neglect was in no way causal of the loss?

Under the above circumstances a trustee should not be held liable
according to Restatement, Trusts, *s.* 179, *comment d.* "If the
trustee takes title to the trust property in his individual name in good
faith, and no loss results from his so doing, he is not liable for breach
of trust. Thus, if the trustee of a mortgage accepts a conveyance
of the property from the mortgagor, and in order to prevent a merger
takes the conveyance in his individual name, acting in good faith
and crediting the trust estate in his accounts with all receipts from
the property, and the only objection to the transaction is that he
took title in his own name, he is not liable merely because the
property depreciates in value. The breach of trust in such a case is
merely a technical breach of trust, and no loss has resulted there-
from. If, however, he took title in his own name in bad faith, in-
tending to misappropriate the property, he is liable for the full
amount of the mortgage and interest thereon. Even if he acted
in good faith, if a loss resulted from the fact that he took title in his
own name, as for example if his personal creditors were thereby
enabled to reach the property free of trust, he would be liable for the
loss."

*Potter* v. *Bank*, 105 F. (2d) 437, supports this view. Certain stock
certificates were transferred to a copartnership consisting of employ-
ees of the defendant bank acting as its agent. The purpose was to
facilitate the investment of the trust fund. Book entries showed the
true ownership although the stock certificates were not earmarked as
belonging to a trust. There was no bad faith and the loss suffered
was caused by economic conditions and not by the failure to earmark.

The Court held that the breach of trust was technical only and that the defendant bank was not liable for the loss.

"Where the failure to earmark is *bona fide*, the good faith of the trustee diminishes the probability that he will be guilty of the subsequent wrongful conduct that must occur before the risk can develop into a loss. Therefore, if the trustee is able to show clearly that he has acted in good faith and that he has not manipulated the accounts of the trust to the prejudice of the beneficiary, there seems to be little justification for charging him for any loss which is not in fact caused by the failure to earmark." 50 Harv. Law Rev. 317, 321. Again on page 322, "The innocent trustee, however, whose failure to earmark has not caused a loss to the trust estate, should not be thus penalized."

The practice of failing to earmark the securities of a trust has been said to be dangerous because of wrongful claims on the part of the trustee or his estate that cannot be known. A penalty may be needed to stop a dangerous practice, but the penalty should be in proportion to the culpability of the offense. It should not consist of a loss in no wise caused by the offense but one that merely occurs during the time of the offense. The State of New York has made it a misdemeanor for a testamentary trustee to engage in this practice. This is an appropriate way of curbing a dangerous practice. It is inequitable for a Court of Equity to substantially penalize a trustee acting in good faith for a neglect of duty that in no way caused the loss complained of when the administration of the trust estate can be accounted for in all essential details.

The rule of penalizing the trustee by making him an insurer against losses not caused by his conduct is inequitable and illogical. It imposes the penalty when the trust estate has suffered misfortune and there are losses but not when there are no losses. Yet there is danger of false claims on the part of the trustee as to title when there are no losses in the trust estate.

The defendant is not liable for the said sum of $7,666.44 because of the reason given, namely, failure to designate the securities as trust property.

The trial Justice properly decreed that the defendant should pay the expense of the accountant. This was made necessary by the inadequacy of the trustee's accounts.

*New trial.*

All concurred.